Francis A. Gunnip and Fred C. Crosland, and John E. Healy and Sons, Inc., a Delaware corporation,

*vs.*

Henry C. Lautenklos, Olivia Thomas, Arthur G. Craig, Herman D. Walker, constituting and being the Board of School Trustees for the Henrik J. Krebs School, Newport School District No. 21, New Castle County, and J. Ohrum Small and George Tyler Coulson, members of the State Board of Education, who with the members of the Board of School Trustees for the Henrik J. Krebs School, Newport School District No. 21, are and constitute the "School Building Commission" of the Henrik J. Krebs School, Newport School District No. 21, and Ernest DiSabatino & Sons, Inc., a corporation of the State of Delaware.

*New Castle, February 9, 1953.*

*Stewart Lynch* and *Alfred R. Fraczkowski*, Wilmington, for plaintiffs.

*Joseph A. L. Errigo* and *John M. Bader*, Wilmington, for School Building Commission.

*S. Samuel Arsht*, Wilmington and *John T. Gallagher*, Chicago, Ill., for Ernest DiSabatino & Sons, Inc.

BRAMHALL, Vice Chancellor: The dispute in this case arises out of the submission by Healy, one of four bidders responding to the proposal of the Commission, of a letter in which four items were suggested as substitutes for items listed in the formal bid made by Healy. Three of the items suggested were not covered by the specifications. The fourth item, in which Healy suggested the

use of another type of window as a substitute for the type listed in his formal bid, was within the specifications of the architect. The windows suggested by Healy as a substitute were the same windows listed by DiSabatino in his formal bid. The Commission refused to accept the letter of Healy as a part of its formal bid and awarded the contract to DiSabatino. Had the Commission accepted the letter of Healy as a part of its bid, Healy's bid would have been the lowest bid, since the windows suggested in Healy's letter were approved in the specifications prepared by the architect for the Commission.

The following questions are presented:

(1) Were the final plans and specifications and estimates of costs duly and legally approved by the administrative bodies charged with that duty?

(2) Was the Commission justified in refusing to consider the Healy letter as a part of Healy's formal bid?

(3) Should the letter of Healy have been accepted by the Commission as a part of its bid by reason of any custom or usage existing in the trade?

1. Were the final plans and specifications and estimates of costs duly and legally approved by the administrative bodies charged with that duty?

Plaintiffs contend that the final plans, specifications and estimates of costs were never approved by the School Building Program Board and the State Board of Education, as provided by *Chapter* 148, *of Volume* 48, *Laws of Delaware*, 1951.

This statute provides that the School Building Program Board shall consider and determine the necessity for any school construction program and shall certify to the State Treasurer its determination, together with the total estimated costs of construction and the respective shares of such total costs to be paid by the state and the local school district. The minutes of this Board show that such approval was given with reference to the Krebs School on October 10, 1951. This act further provides that the School Building Program Board and the State Board of Education shall

approve the final plans, together with estimates of cost and specifications. The minutes of the School Program Board show that such approval was given to the Krebs school program on September 24, 1952. The minutes of the State Board of Education show that consideration and approval were given to the preliminary plans on March 20, 1952, and to the final plans and specifications on August 28, 1952. The act provides that the School Building Commission shall carry out the construction program and in doing so shall make and enter into all contracts for school construction, furniture, equipment, et cetera; there is no provision therein for the approval of the plans and specifications by the School Building Commission.

Plaintiffs contend that the construction program for the Krebs School was never formally approved because: (1) such approval was not given by all of the members of the School Building Program Board and the State Board of Education, since all of the members were not present at any one meeting; (2) that the consideration and study given by the State Board of Education to the plans and specifications was cursory, incomplete, and not such as required by the act.

The assertion of plaintiffs that the approval of the construction program was void because all of the members of these bodies were not present at each meeting is without merit. It is sufficient if all the members were duly notified of the meetings and had an opportunity to participate therein. If due notice has been given, a majority constitutes a quorum. *New England Box Co. v. C. & R. Construction Co.*, 313 *Mass.* 696, 49 *N.E.2d* 121, 150 *A.L.R.* 152. See also cases cited in 42 *Am.Jur.*, *Public Administrative Law*, *Sec.* 72, *p.* 384; *McQuillin, Municipal Corporations* (*3d Ed.*), *Sec.* 1330, *p.* 384; and *Dillon, Municipal Corporations*, *Vol.* 2, *Sec.* 521, *p.* 845–6. This is the common law rule. In the absence of a statute the common law rule will be applied. 2 *Kent's Commentaries*, 13th Ed., *p.* 399, * *p.* 293. There was therefore a quorum present at all meetings of the School Building Program Board and all meetings of the State Board of Education. The minutes of these meetings were regular and complete. In the absence of evidence to the contrary, it will be presumed that all

the members thereof had due notice of these meetings. *Kavanaugh v. City of Wausau*, 120 *Wis.* 611, 98 *N.W.* 550, 552. See 13 *Am.Jur., Corporations, Sec.* 954, *p.* 914.

There was one meeting of the School Building Commission on February 16, 1952, at which only three of the six members were present. However, the statute does not provide that the Commission give formal approval to the plans and specifications for the construction program; its duty was to see that they were put into effect.

■■ With reference to the consideration of the plans and specifications by the State Board of Education, the testimony offered shows that, prior to its approval, the plans and specifications had been examined by the chief engineer of the Delaware School Auxiliary Association,—who has examined all plans and specifications for school construction in this state for a number of years,—and approved by him. In addition, they were duly considered by the members of the State Board of Education at a regularly constituted meeting. It is true that the testimony is somewhat indefinite as to just how much time was consumed in this examination. Nevertheless, the minutes of that meeting show that the school building program was examined and approved by the board. The production of the minutes of meetings of these organizations is the proper method of proving their acts. *Carbone, Inc. v. Kelley*, 289 *Mass.* 602, 605, 194 *N.E.* 701. In the absence of evidence rebutting the record of such action the minutes must stand.

Plaintiffs contend that the School Building Program Commission and the State Board of Education did not consider the plans and specifications of the Krebs School submitted to those bodies as thoroughly as it should have and for that reason its formal approval as shown on the minutes is of no effect. The testimony offered with respect to the consideration given by these bodies, in particular that of the State Board of Education, is not very helpful. Under this testimony the State Board of Education may have spent a great deal of time, or a very little time, in the study of these plans and specifications. Be that as it may, the testimony does not prove plaintiffs' contention. The minutes show

the approval of the plans and specifications and, in the absence of any substantial evidence to the contrary, it will be presumed that these boards did their duty. The fact that in the consideration of the plans and specifications the State Board of Education sought the advice of the chief engineer for the Delaware School Auxiliary Association—who at different times has acted in a similar capacity for many of the schools of this state—and obtained the benefit of his advice, is a strong indication that these plans and specifications were given serious consideration by that board. Whatever time may have been devoted to the examination and study of these plans and specifications, there is no evidence to show that any member of the board did not understand or approve these plans. It must be presumed that they did. I conclude that the testimony offered by plaintiffs with respect to the action of the School Building Program Commission and the State Board of Education is not sufficient to rebut the presumption that these boards did their duty as required by the statute.

2. Was the Commission justified in refusing to consider the Healy letter as a part of Healy's formal bid?

In the instructions to bidders set forth in the specifications the Commission provided that each proposal should be submitted on the form contained in the specifications, with all blanks properly filled in, and delivered to the Commission; that a contract would be awarded to that qualified and responsible bidder whose base formal bid for the work was lowest, provided the amount of such bid should not exceed the amount of the funds estimated as being available to finance the contract; that the commission might reject all bids should the base bid exceed the amount of available funds; that it might award the contract on the basis of a bid combined with any deductible alternate estimates included in the proposal form until a net amount should be reached which would be within the amount of available funds; that should the base bid be below the amount of available funds, the owner might accept any alternative estimates "included in the proposal form" until a gross amount should be reached which would be within the amount of available funds.

At the time of the reading of the formal bids, the bid of

DiSabatino was lower than that of Healy by the sum of $1,813. Healy then requested that his letter be read. It was provided, *inter alia*, in the Healy letter that if certain windows known as Cupples windows should be used instead of Adams-Westlake, the sum of $4,200 should be deducted from Healy's formal bid. Under the specifications both the Adams-Westlake and the Cupples windows were acceptable to the Commission. The Commission fixed a time for a meeting, obtained the advice of counsel, consulted with its architect, and with the chief engineer associated with the Delaware School Auxiliary Association. At a subsequent meeting of the Commission the bid of DiSabatino was accepted as the lowest formal bid and a contract was awarded in accordance with that decision.

■ The authority of a School Building Program Commission to prescribe the conditions for the acceptance of bids is so broad that there can be no doubt of the power of this Commission to adopt the conditions contained in its instructions to bidders. See *Ebbeson v. Board of Public Education in Wilmington*, 18 *Del.Ch.* 37, 156 *A.* 286. The proposed form of bid was fully set forth in the proposals submitted to bidders. Since the Commission would have the right to prescribe the conditions upon which bids would be accepted, it would also have the right to refuse to accept any bids not in substantial conformity therewith. See *Ebbeson v. Board of Public Education in Wilmington, supra.* However, the formal bid submitted by Healy was in compliance in all respects with the instructions to bidders and with the proposal form of bid. Had Healy's formal bid been the low bid, it may be presumed that the contract would have been awarded to him. What would have happened to the letter under such circumstances is questionable. Certainly it would not then have been a part of Healy's bid. If it would not have been a part of Healy's bid in the event that it would have been the low bid, how can it be considered a part of its bid when the base formal bid of Healy was not the low bid? To give Healy an opportunity to present a formal bid in accordance with the proposal and then to allow it to modify that bid, even though one of the modifications suggested therein is in accord with the specifications submitted by the Commission, would, in effect, permit him to submit a new bid, after the opening and reading of

all other bids. This would give him an unfair advantage over the other bidders. To permit this to be done would open the door to favoritism and preference, and perhaps fraud.

■ ■ As previously stated, the Commission is given wide authority under the statute in prescribing for the submission of proposals, acceptance of bids, making of contracts, and the construction of school buildings. See *Ebbeson v. Board of Public Education in Wilmington, supra.* In the exercise of such powers it has wide discretion. *Keogh v. Mayor and Council of Wilmington,* 4 *Del.Ch.* 491. In the absence of proof to the contrary it will be presumed that when it awarded the contract to DiSabatino it discharged its function legally. *Fetters v. Mayor and Council of Wilmington,* 31 *Del.Ch.* 319, 325, 72 *A.2d* 626. Unless it exercised its discretionary powers fraudulently or in an arbitrary or capricious manner, without giving proper consideration to all matters which were pertinent to its decision, the judgment of the Commission should not be superseded by the judgment of the court. There is no contention that it was guilty of fraud or favoritism. The fact that prior to making its decision to award the contract to DiSabatino the Commission first consulted counsel and conferred with its architect and engineer, indicates strongly that it did not act arbitrarily or capriciously. Having acted in good faith, in accordance with the authority conferred upon it by statute, and after consulting with those with whom it might reasonably be expected to confer, its determination in the exercise of its discretionary powers, should not be disturbed even though the decision reached by the Commission might be questionable. *Taylor v. County Board of Arlington County,* 189 *Va.* 472, 53 *S.E.2d* 34.

■ I conclude that the Commission in refusing to accept the letter of Healy, acted in good faith and in the proper exercise of its discretion, after giving due weight to all factors which were legally proper matters for its consideration.

3. Should the letter of Healy have been accepted by the Commission as a part of its bid by reason of any custom or usage existing in the trade?

Plaintiffs contend that there is a custom or usage among gen-

eral contractors in submitting bid proposals to offer voluntary estimates in the form of a letter, enlarging or expanding the original bid, which enlargements are considered by the public authority in determining to whom the contract should be awarded.

A custom or usage may sometimes be proven where the instrument is ambiguous and uncertain in its meaning. *Weinacht v. Board of Chosen Freeholders of Bergen County*, 3 *N.J.* 330, 70 *A.2d* 69, 72. It may never be offered to contradict the terms of a written instrument where its terms are clear and unambiguous. See cases cited in 55 *Am.Jur., Usages and Customs*, p. 293, n. 19, and 25 *C.J.S., Customs and Usages*, § 30, p. 118. The proposals for bids received by Healy not only set forth in detail, in clear and unmistakable language, the manner in which a bid should be submitted, but there was also enclosed a form which bidders were instructed to follow in submitting their bids. Healy followed these instructions to the letter and its bid was submitted on the form prescribed by the Commission. It would therefore seem that its understanding thereof was at least reasonably clear.

Assuming, however, that plaintiffs had the right to offer testimony, as they were permitted to do, to show such a custom or usage, the proof offered failed to establish a custom or usage of accepting a voluntary alternate or an expansion of bid, for consideration in awarding the contract. The testimony of the witnesses called by plaintiffs, with the exception of that of John E. Healy, II, associated with the Healy corporation, was to the effect that while it was true that letters offering a voluntary alternate were often submitted with bids, such letters were frequently submitted at the request of the public authority and in cases where they were not submitted in accordance with such solicitation or request, were never considered in determining the bidder to whom the contract should be awarded. The only evidence which was offered contrary to this testimony was to the effect that in one, or possibly two, cases only was such a letter ever considered in determining to whom the contract should be awarded. The weight of this testimony was to the effect that unless the alternate proposal was solicited by the public authority it was never considered in awarding the bids. I cannot accept plaintiffs' contention that

Healy's letter should have been accepted because of custom or usage.

An order will be signed, on notice, in accordance with this opinion.