## CIRCUIT COURT OF THE CITY OF NORFOLK

Qualicon Corp.

v.

City of Norfolk

February 24, 1995

Case No. (Law) L95-297

BY JUDGE JOHN C. MORRISON, JR.

This case is pending on Qualicon Corporation's Motion for Judgment against the City of Norfolk in which Qualicon seeks to set aside an award by the City of a contract to Peters & White Construction ("PWC") and to have the contract awarded to Qualicon. PWC has intervened as a third-party defendant. The sole issue to be resolved is whether PWC's failure to include submittals on in-lake piping with its bid was an informality that could be waived by the City in making its award decision.

On November 9, 1994, the City issued Instruction to Bidders on a project to build a hypolimnetic aeration system at Lake Prince (the "Project"). On November 22, 1994, an Invitation to Bid was issued for the Project work. The Instruction to Bidders and the Invitation to Bid (hereinafter referred to collectively as the Invitation for Bids "IFB") set forth specific requirements to guide bidders in preparing their bids.

Section 00100, page 3, of the IFB, which is entitled "Special Bidding Requirements," states that "the Contractor shall provide submittals as required in Section 11320 . . . with the proposal. Failure to do so shall result in the Bid being found nonresponsive." Section 11320, subsection 1.3, entitled "Submittal of Proposal Material," provides that:

> The following information shall be included as a part of all submittals: 1. Detailed drawings and descriptions of all items of equipment, showing all dimensions, parts, construction details,

and materials of construction. 2. Product data including the make and model of each major item of equipment.

The "major equipment items" are defined in 11320 at page 1 as "aerators, in-lake piping, marker buoys and maintenance boat." The Bid Instructions also state at Section 00100, page 6, that the city "reserves the right to . . . waive any and all informalities" in the bid proposals.

The bids were opened on January 6, 1995. PWC was the lowest bidder for the Project at $2,036,674.00, and Qualicon was the second lowest bidder at a price of $2,106,300.00. While Qualicon included all of the required information, PWC failed to include any information regarding the in-lake piping with its bid. Notwithstanding PWC's omission, the City awarded the Project contract to PWC.

On January 9, 1995, Qualicon filed a bid protest letter which was supplemented on January 16, 1995. On January 26, 1995, the City rejected Qualicon's protest. The City reasoned that PWC's omission did not affect the essential competitive elements of the bid. Subsequently, on February 1, 1995, Qualicon filed this action to set aside the City's award of the Project contract to PWC and to grant the project to Qualicon.

In Virginia the procurement of public contracts is regulated by the Virginia Public Procurement Act ("VPPA"). *See* Va. Code §§ 11-35 through 11-80 (Michie 1950). The primary goal of the VPPA is to facilitate competition in the governmental procurement of nongovernmental resources. *See* Va. Code § 11-35 (Michie 1950). Competitive sealed bidding, according to the VPPA, commands the award of a public contract "to the lowest responsive and responsible bidder." Va. Code § 11-37 (Michie 1950). A "responsive bidder" is defined in the Code as "a person who has submitted a bid which conforms in all material respects to the Invitation to Bid." *Id.* Va. Code § 11-42 (Michie 1950) provides that, "[a] public body may waive informalities in bids." Va. Code § 11-42 (Michie 1950). An informality is defined as:

a minor defect or variation of a bid or proposal from the exact requirements of the Invitation to Bid, or the Request for Proposal, which does not affect the price, quality, quantity, or delivery schedule for the goods, services, or construction being procured.

Code § 11-37.

Qualicon asserts that PWC's failure to include any information on in-lake piping in its bid submittal was a material defect that rendered the bid

nonresponsive. Conversely, the City contends that PWC's omission was not a material nonconformity but was instead an informality that could be waived by the City. The evidence does not support the City's contention.

As noted above, the IFB required strict compliance with the submittal requirements contained in Section 11320 of the contract documents. Section 11320 clearly stated that each bidder "shall" include as part of their bid submittals "[d]etailed drawing and descriptions of all items of equipment . . ." as well as "[p]roduct data, including the make and model of each major item of equipment." *Supra*, p. 1. Section 11320 explicitly included "in-lake piping" as one of the "major equipment items." *Id.* The seriousness of compliance was underscored by a clear warning that "[f]ailure to [comply] shall result in the Bid being found nonresponsive." *Id.* Notwithstanding this clear and unambiguous language, PWC failed to include submittals on in-lake piping with its bid. By the very terms of the IFB, PWC's omission was not an informality but was instead a material defect that rendered the bid nonresponsive.

The City seeks to override the clear mandates of the IFB with the testimony of the City's engineering consultants who drafted the contract documents and who are administering the Project. The engineers testified that in drafting the contract documents, they never intended to require submittals on in-lake piping with the Project bids and that all of the bidders shared in this understanding. The Court does not question the veracity of the engineering consultants. However, "procurement procedures must be conducted in a fair and impartial manner with avoidance of any impropriety *or the appearance of impropriety*." Code § 11-35 (emphasis added).

If the Court were to substitute the unexpressed intent of the engineers for the clear and unambiguous language of the IFB, the competitiveness as well as the integrity of the bidding process would be undermined.[1] For example, only parties who properly construed the strict language of the IFB would be burdened with the stringent requirements of bid submittals. They would be forced to expend time and incur expenses that would not

---

[1] The Court also notes that there is compelling evidence that contradicts the testimony of the engineering consultants that all of the bidders shared their understanding of the IFB. For example, the President of Qualicon testified under oath that he understood the IFB to require submittals on in-lake piping. Such testimony was corroborated by the fact that Qualicon did, in fact, proffer such submittals. Additionally, there was testimony that even PWC was preparing a submittal on in-lake piping until they were informed by the City on the eve of the bidding that such submittals would not be necessary. This information was not communicated to the other parties at the pre-bid conference or at any other time.

burden bidders who had access to the concealed meaning of the IFB. In fact, some of the potential bidders who observed the IFB language might decide not to bid at all. Additionally, bidders who adhered to the words of the IFB would be prejudiced because they would be forced to commit themselves to a proposal at the bidding stage and would face potential rejection based on inadequate submittals. Other bidders would not face rejection at the bidding stage and, in fact, would later have an opportunity to negotiate which was never afforded the bidders who complied with the IFB. Additionally, public decision-makers would be vested with the unbridled discretion to disregard material written requirements in favor of preferred bidders.

The City also argues that PWC's failure to take exception to the specifications for in-lake piping noted at Section 11320 of the contract documents qualified as a submittal. In effect, the City is arguing that the specifications were so precise that affirmative submittals on in-lake piping would have been superfluous. If the IFB did not contain clear mandatory language, the City's argument might be more plausible. However, as noted above, the IFB clearly and unambiguously required bidders to affirmatively proffer with their bids the make and model of proposed in-lake piping as well as drawings and other materials. The importance of this requirement was emphasized by a warning that a failure to comply would render the bid nonresponsive. The City's argument would invalidate the words of the IFB.

Lastly, the City offers numerous cases to support its contention that PWC's omission was an informality that could be waived in the award decision. *See, e.g., Taylor v. County Board of Arlington*, 189 Va. 472 (1949), and *Rubbermaid Applied Products, Inc. v. City of Richmond*, Richmond Cir. Ct. (1982). Such cases are, however, readily distinguishable from the case at the bar. None of the cases referred to by the City involved a situation, as in this case, where a bidder completely disregarded a mandatory requirement of the IFB. More importantly, the nonconformities in those cases were not rendered material and the bids nonresponsive by the very terms of the relevant IFB's. The opposite is true in the case at the bar.

This Court is extremely reluctant to second-guess the City in its administration of the public bidding process. Nevertheless, the Court is required to reverse a public body's award decision "if the petitioner establishes that the . . . award is not an honest exercise of discretion." Code § 11-70. An

award reflects a failure to exercise honest discretion if it "is arbitrary or capricious or not in accordance with the Constitution of Virginia, statutes, regulations or the terms and conditions of the Invitation to Bid or Request for Proposal." *Id*. Qualicon has offered sufficient evidence to show that the City's award decision was not in accordance with the IFB or the VPPA. While it is clear that the VPPA accords a wide degree of discretion to the City, the IFB by its own terms limits that discretion. The City's failure to adhere to such limits was arbitrary. Accordingly, the award of the Project contract to PWC is reversed.

Although Qualicon has requested, in the nature of specific performance, a directive to the City to fairly consider its bid, the Court is not aware of any authority which authorizes this action. Additionally, the Court declines the award of attorneys' fees and costs as requested by Qualicon. The injunction heretofore imposed in this matter is dissolved, and the requirement of bond posting by Qualicon is cancelled.