# CIRCUIT COURT OF THE CITY OF RICHMOND

Fortran Corporation

v.

Commonwealth of Virginia

July 16, 1997

Case No. HI-68-3

BY JUDGE T. J. MARKOW

This case is before the court on cross motions for Summary Judgment. The parties have stipulated to the facts and exhibits. The Court has considered the arguments and briefs and renders the following opinion.

The Commonwealth of Virginia, through the Division of General Services (DGS), issued a Request for Proposal (RFP) to procure a telephone system for the Virginia Senate and House of Delegates. The RFP was issued on September 6, 1996. The RFP was amended by Addendum No. 1 to the RFP on September 24, 1996. The two documents together make up the entire solicitation. For convenience, unless the context requires otherwise, the Court will refer to the two documents collectively as the RFP.

The RFP required proposals to be submitted by October 4, 1996. Several vendors submitted proposals, including Mitel Corporation and Plaintiff Fortran Corporation. After evaluating all of the proposals received, the Commonwealth entered into negotiations only with Mitel and Fortran.[1] There were three negotiation meetings between the Commonwealth and each of the two potential vendors. On December 16, 1996, the Commonwealth announced its intention to award the contract to Mitel. Fortran filed a timely letter of protest to the DGS.

---

[1] Actually, there was a third vendor who participated in the negotiations, but it was dropped after the first round. Its involvement in the process has no bearing on the issues before the court.

DGS denied Fortran's protest and continued with its intent to award the contract to Mitel. Fortran then filed the Bill of Complaint that brings the case before this court.

Fortran presents a four part argument, three of them are interrelated.

1. Mitel's proposal, as accepted by the Commonwealth, is not compliant with the Minimum Mandatory Requirements, as set forth in the RFP, concerning redundancy in critical system components.

2. Mitel's proposal, as accepted by the Commonwealth, is not compliant with the Minimum Mandatory Requirements, as set forth in the RFP, concerning live monitoring of General Assembly sessions.

3. Mitel never properly disclosed its functions and specifications showing how it would meet the Minimum Mandatory Requirements concerning live monitoring of the General Assembly sessions.

4. By negotiating with a vendor which was not, at the time of negotiations, in compliance with the Minimum Mandatory Requirements concerning live monitoring of the General Assembly Sessions, the Commonwealth has acted in an arbitrary and capricious manner, and the negotiations were improper.

The Commonwealth argues that Fortran is misreading the requirements of the RFP and that it did nothing improper. Furthermore, the Commonwealth contends, the Mitel proposal is in compliance, and the award was made on a fair and impartial basis. The Court will address the specific arguments concerning each of the issues separately.

### Redundancy of Critical Systems

According to the RFP, "[a]ll items listed in Section III 'Statement of Needs' and Section VIII 'General Terms and Conditions' are minimum mandatory requirements." Addendum to RFP ¶ B(11). "Mandatory requirements are those required by law or regulation or are such that they cannot be waived and are not subject to negotiation." RFP, Section IV, ¶ A(2).

One of the provisions of Section III, and therefore, by its own terms, a minimum mandatory requirement of the RFP, reads as follows:

> The system's architecture shall provide redundant critical system components that would allow the system to remain fully operational during a failure of a like component.

RFP, Section III, ¶ 2(g). This requirement was again mentioned in the addendum as follows:

In the event of a major system failure, the system should remain fully operational. The Offeror should explain how there is redundancy throughout the system ... .

Addendum to RFP ¶ B(7). Fortran argues that these provisions mean that, at a minimum, any component falling within the category of critical components, must have a built-in redundancy. The Commonwealth and Mitel admit that the Mitel system which was accepted by the Commonwealth is not completely redundant. However, the Commonwealth argues that the provisions quoted above require that the system have at least some critical component redundancy to meet the minimum and that the actual redundancy in the system, if greater than the minimum, would allow the system to score higher during the evaluation process. Furthermore, the Commonwealth argues that there is redundancy in the Mitel system for components that it (the Commonwealth) considers to be critical.

That is a summary of the arguments on this issue. What is apparent from this summary is that the contentions of Fortran on this issue are focused on Mitel's compliance or noncompliance with the minimum requirements. They do not, in any way, argue that the Fortran system was not awarded all of the points it deserved based on how redundant it is or that the Mitel system was awarded too many points for its relative level of redundancy. The Commonwealth points out this distinction and then points to the issues raised at the administrative level.

In its administrative protest, Fortran addressed the issue of redundancy under the heading "Over Allocation of Technical Evaluation Points to Mitel." The thrust of the protest on this subject is that Mitel's score, as calculated by DGS, was incorrectly higher than it should have been. There is an explanation in this section of the protest as to why Fortran believed Mitel's system to be less than completely redundant. There is also a statement within the protest on this subject that, in referring to the claim that Mitel did not disclose how lacking in redundancy its system was, "[f]ull disclosure would have lowered Mitel's technical score and perhaps even rendered the offer unacceptable ... ." Protest, pp. 9-10.

The Commonwealth argues that the claim that Mitel's system is so lacking in redundancy that it is not in compliance with the minimum mandatory requirements is new in court. The Commonwealth argues that Fortran did not give the agency the opportunity to consider this position and act upon it before being taken to court. As such, the Commonwealth concludes that Fortran should not be allowed to bring this action now.

The Court cannot agree. By alerting the Commonwealth to possible problems concerning the redundancy, Fortran brought the issue to the forefront. The agency knew of its requirements and it saw the assertions of the protest. If the agency, faced with the factual claims made by Fortran during the protest, did not investigate them then, it cannot claim that it was not given an opportunity. Fortran has properly raised this issue.

The Court returns to the merits of this claim. The appropriate standard of review is articulated in Va. Code § 11-70(C). That section specifies that the award shall be reversed only if, among other things, it is "not in accordance with ... the terms and conditions of the ... Request for Proposal." This law was designed around the public policy of promoting fair competition in the government procurement process. If the agency is allowed to accept a proposal that is not in compliance with the terms of the RFP, the other vendors making proposals were not given the same opportunity as the prevailing vendor to propose a system with different, and potentially reduced, minimum requirements. Therefore, the Court will overturn any award which is to a vendor offering a product which does not comply with the requirements of the RFP. *See, e.g., Qualicon Corp. v. City of Norfolk*, 36 Va. Cir. 83 (Norfolk Cir. Ct. 1995) (sustaining protest where contracting agency improperly made award to bidder whose proposal did not include submittals describing technical equipment); *Government Micro Resources, Inc. v. Department of Justice et al.*, GSBCA No. 12493-P, 94-3 BCA 26965 (Sept. 13, 1993) (sustaining protest where contracting agency improperly made award to offeror whose proposal did not include the mandatory requirement to identify at least two instructors having three months working experience with computer system). It only remains to examine what those requirements are in this case.

A reading of the plain language of the RFP leads the Court to conclude that all of the critical components of the system must be redundant. A reasonable vendor, preparing its proposal, would not read the above quoted sections and conclude that it is in compliance if at least one critical component is redundant. As quoted above, the Addendum states that the system should remain fully operational and that this should be accomplished with redundancy "throughout the system." Addendum to RFP ¶ B(7). The Commonwealth might have meant that only one critical component must be redundant while the rest may be, or may not be, redundant, but it did not say so in its RFP.

There is much argument between the parties as to what constitutes a critical component. Fortran has brought to the Court's attention several elements of the Mitel system which are not redundant. The Commonwealth

argues that each of these is not critical. The Court finds that, at a minimum, any component which, if it fails, causes a failure in the operation of a substantial part of the system, is a critical component. Fortran has pointed to one such component in the Mitel system, the Control Resource Card (CRC). The parties agree that if this card were to fail in its entirety, the system would go down in its entirety. The parties also agree that there is no redundant card in this system backing up the CRC. The Commonwealth argues that, for each computer chip on the card, there is a second backup chip on the same card, and therefore, it concludes, the card has the redundancy necessary. This argument ignores the possibility of the card itself, not the computer chips which it houses, failing. The Mitel system lacks this redundancy. Therefore, it does not comply with the Mandatory Minimum Requirements of the RFP. The award of the contract to Mitel must be set aside.

### Live Monitoring

The RFP, as a minimum mandatory requirement, demands the following:

> The system proposed shall include the capability to allow for the "live" monitoring of the House and Senate proceedings, e.g. each digital telephone shall have access to the House and Senate proceedings.

RFP, Section III, ¶ C(2)(e). Fortran argues that the Mitel system only allows a limited number of the telephones to have access to the House or Senate proceedings at any one time. Fortran contends that the language requiring that "each digital telephone" have such access actually means that the system should allow for the simultaneous access of the proceedings by all of the digital telephones. Fortran continues by pointing out that, not only does Mitel's system lack in the ability to allow for simultaneous access, but it also only allows the monitoring of either the House *or* the Senate at any given time.

Apparently, the Mitel system uses a feature referred to as music-on-hold. This audio channel would be receiving input from the sound system of the House or the Senate. As a result, any user at a handset on the system could press a button and hear whichever proceeding was being monitored. However, there is only one music-on-hold channel in the system, so only one of the legislative bodies sessions could be monitored at any one time. As such, if the system were monitoring the House, and a listener wished to monitor the

Senate, the entire system would have to be switched over, so that every listener would hear the Senate.

The Commonwealth argues that Mitel's proposal is in compliance. This is so, it claims, because the RFP only requires that each telephone have access. The RFP does not require simultaneous access of all phones to each system. Furthermore, they say, Mitel has represented to the Commonwealth that it will be in compliance.

Originally, Mitel proposed a "work-around" using an ancillary hardware device, which was neither described nor detailed. Later, they claimed to have developed an upgraded system, which they would provide at no extra charge, which would solve the problem by having two music-on-hold channels. Based on this claim, the Commonwealth argued that this issue had been rendered moot. However, it has since come to light that the dual channel music-on-hold feature is still not available. As such, the Commonwealth has withdrawn the mootness argument. Presumably returning to the position of expecting a hardware work-around again. One way or the other, the Commonwealth is relying on that assertion by Mitel that all telephones will have access.

Based on the Commonwealth's argument, a vendor would be in compliance if every telephone had a button that would connect it to one or the other of the sessions, but only one handset could use that feature at a time. While there is certainly a conspicuous lack of language to the effect that simultaneous access must be available, the Commonwealth's reading of the language present does not comport with what a reasonable vendor would interpret that to mean. More to the point, the language explicitly requires access to the House *and* Senate proceedings. Under the system proposed by Mitel, each phone would have access (if one accepts the Commonwealth's definition of access as being synonymous with potential capability) to either the House *or* the Senate proceedings. The Court does not here make a finding of how many phones should have access simultaneously. It is not necessary to do so in light of the fact that the Mitel system does not comply due to its inability to monitor both the House and the Senate. For this reason, the award of the contract should be reversed.

### Remaining Issues

The remaining issues, failure of Mitel to adequately disclose the details of its system and improper negotiations, become insignificant in light of the above findings. The Court does not, at this time, pass on the merits of these claims.

## Conclusion

The Court need only conclude that the proposal accepted by the agency failed to meet the requirements on any one issue to reverse the award. *See, e.g., Qualicon*, 36 Va. Cir. at 85. In this case, the Court has determined that the Mitel system is deficient in two important respects: it does not meet the mandatory minimum requirements for redundancy or for live monitoring. Therefore, summary judgment will be entered in favor of Fortran Corporation, and the award to Mitel will be reversed.

As the Commonwealth could have chosen not to make any award at all, the Court will not order that the Commonwealth make the award to the next compliant offeror, Fortran, as requested in the prayer for relief. The Commonwealth may do so, however.