𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

LOW MOOR IRON COMPANY OF VIRGINIA V. JACKSON.

January 12, 1915.

1. BROKERS—*Commissions—Finding a Purchaser.*—A real estate broker, to be entitled to compensation, must show that he has completed his undertaking according to its terms, or that its completion was prevented without his fault by his prinicpal at a time or under circumstances when the latter had no right to interfere.

2. BROKERS—*Commissions—Unwritten Contract With Purchaser.*— Where the authority given to a broker to sell land does not require him to produce a written contract with the purchaser, he is entitled to his commission when he produces a purchaser able, ready and willing to buy, although no written contract for the sale is entered into between the owner and the purchaser.

3. BROKERS — *Commissions — Purchaser — Burden of Proof.*—The burden of showing that a purchaser procured by a broker is able, ready and willing to purchase ordinarily rests on the broker.

4. JURORS AND JURIES—*Credibility of Witnesses—Instructions.*— Juries are judges of the credibility of witnesses, but they do not exercise an arbitrary discretion, and it is the duty of the court, while not in the least intimating its opinion upon the facts, to give to the jury, either of its own motion or when requested by either of the parties, proper instructions to enable them intelligently to consider, weigh, and determine the value of the testimony, and other evidence submitted for their consideration.

5. JURORS AND JURIES—*Conflicting Testimony—How Weighed.*—In weighing the testimony of conflicting witnesses, the jury should consider the accuracy of the recollection of each witness, the reasonableness and consistency of each part of his evidence with the residue thereof, his interest in the results of the litigation, if any, and his demeanor while testifying.

Error to a judgment of the Circuit Court of Alleghany county in an action of assumpsit. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The defendant moved the court to give the jury the following five instructions:

(A) The court instructs the jury that they shall find a verdict for the defendant unless the plaintiff has, by a preponderance of the evidence, proven to their satisfaction:

(1) That on December 30, 1911, John H. Mitchell constituted the plaintiff his agent and authorized him to purchase for him the tract of land in the declaration mentioned at the price of eleven thousand dollars at any time within ten days from the said date.

(2) That on the said date the defendant accepted the said proposition giving the said Mitchell the privilege of purchasing the said land at said price at any time within said period of ten days, and directed the plaintiff, as its agent, to notify Mitchell accordingly.

(3) That the said Mitchell, at no time within said period of ten days made to the defendant a proposition different from that hereinbefore stated.

(4) That the said Mitchell at all times within ten days from said date was ready and willing to unconditionally pay the said sum of eleven thousand dollars for the said property.

(B) The court further instructs the jury that in weighing the evidence of each of the witnesses who has testified in this case, they should consider the accuracy of his recollection, the reasonableness and consistency of each part of his evidence with the residue thereof, and his interest in the result of this controversy, if he is shown by the evi-

dence to have any interest therein, and his demeanor while testifying.

(C)   The court further instructs the jury that unless for a cause or causes based upon the evidence, they have no right to disregard the evidence of any of the witnesses who have testified in this case.

(D)   The court further instructs the jury that unless they believe from the evidence that the defendant agreed that it would first enter into a written contract with the said J. H. Mitchell with the understanding that the said contract would, afterwards, be carried into effect by deed, they shall find for the defendant.

(E)   The court further instructs the jury that unless the alleged agreement of J. H. Mitchell to purchase the said tract of land was unconditional and that the said agreement or some memorandum thereof was in writing and signed by the said J. H. Mitchell or by his duly authorized agent, the said Mitchell was not legally bound to purchase said property; and unless they believe that he was legally bound to purchase said property, they shall find for the defendant.

But the court refused to give instructions A, B,* D, and E, asked for by the defendant, and, on its own motion and over the objection of defendant, gave the following three instructions:

(1)   If the jury believes from the evidence that Mitchell agreed with Jackson that he would give $11,000.00 for the land, and that Jackson made this offer to Mr. Means, and that Mitchell was ready, able and willing to take the land at that price, then the jury are instructed that Jackson was thereupon entitled to commission on the sale price.

(2)   If the jury believes from the evidence that Jackson never offered on behalf of Mitchell but $10,500.00, and that

*See note at the end of the case.

Means declined to sell at that price, and so told Jackson, then Jackson is not entitled to commissions.

(3) The burden is upon Jackson to show by a preponderance of the evidence, that he made the offer of $11,000.00 on behalf of Mitchell, and that Mitchell was ready, able and willing to carry the offer into a complete purchase.

*Jno. T. Delaney,* for the plaintiff in error.

*Geo. A. Revercomb* and *C. B. Cushing,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

This suit was brought by Jackson against the Low Moor Iron Company to recover commissions upon a sale of certain real estate owned by the defendant company.

Evidence was introduced before the jury tending to prove that the Low Moor Iron Company had for sale certain real estate in Alleghany county known as the "Rumsey" or "Mud Tunnel" lands; that in October, 1911, the company informed Jackson that if, before any one else would do so, he would get a purchaser for the lands at the price of $11,000, it would pay him a commission. Jackson introduced J. H. Mitchell to make a proposition to the company for the lands. His first offer was $10,000, which Mr. Means, the president of the company, declined. Subsequently he procured from Mitchell authority to make an offer of $11,000, and on the 30th of December, in an interview with Means, the president, Jackson made an offer of $10,500 for the property, which Means also declined, and thereupon Jackson made an offer of $11,000, which according to Jackson's account Means accepted and told Jackson to write at once to Mitchell, which Jackson did, as follows:

"Covington, Va., December 30, 1911.

\*    \*    \*    \*    \*    \*

"I saw Mr. Means today. He wouldn't take less than $11,000.00, and said that wasn't near the worth of the property. You know what you told me today. Everything is clear; they are ready to make you a deed any time. I find there is 3,016 acres in this tract. I would like to hear from you at earliest convenience."

Jackson in his statement further says that at the time he made the offer of $11,000 which was accepted by Mr. Means as president of the Low Moor Iron Company, it was also agreed that Mitchell was to have ten days from December 30 within which to have the title to the property examined.

On January 5, 1912, S. G. Cargill, assistant treasurer of the Low Moor Iron Company, wrote to Jackson at Covington, Va., as follows:

"Referring to the matter of our 3,217 acre tract known as the Rumsey land, beg to advise that we have sold these lands through another agent to Mr. D. N. Byer."

The testimony of Mr. Mitchell confirms that of Jackson, while the evidence of the plaintiff in error is in irreconcilable conflict with the account given by Jackson. That Mitchell was willing and able to complete the purchase is established by the evidence, nor is there any contest as to the amount of the verdict, if the plaintiff was entitled to a recovery, the position of plaintiff in error being that the defendant in error had failed to make out his case, and that the verdict should have been for the defendant.

One of the principal allegations of error is that the court refused to instruct the jury that to entitle the plaintiff to recover there must have been some agreement or memorandum thereof in writing signed by the purchaser or his duly authorized agent.

There are cases which hold that a written contract between the buyer and the seller, or at least a written offer

from the buyer which the seller may turn into a contract, is essential. See Mechem on Agency, sec. 2431; *Wilson* v. *Mason,* 158 Ill. 304, 42 N. E. 134; *Mattingly* v. *Pennie,* 105 Cal. 514, 39 Pac. 200, 45 Am. St. Rep. 87.

In *Caldwell and wife* v. *Tannehill, ante,* p. 11, 84 S. E. 6, decided at the present term, the authority of the broker to sell contained a special stipulation, among others, that "unless the place is sold or contracted to be sold in writing on or before November 28, 1913, the whole proposition is withdrawn and if it comes up again it must come up as new business." Commenting upon this feature of the case, Judge Buchanan says: "The time within which the authority given could be exercised was extended until December 3, following. The letter was not a mere authority to find a purchaser, but in order to comply with his undertaking the farm must be sold or contracted to be sold in writing within the time named. Under such authority the broker does not become entitled to his commissions by merely producing a customer who is ready, willing and able to purchase unless a sale or contract to sell is actually entered into by the owner of the land." And the conclusion in that case was that, no contract of sale in writing having been entered into, the commissions could not be recovered by the broker. That case reviews many authorities and states the general rule to be "that a real estate broker, to be entitled to compensation, must show that he has completed his undertaking according to its terms, or that its completion was prevented without his fault by his principal at a time or under circumstances when the latter had no right to interfere." Citing 2 Mechem on Agency, sec. 2427; 2 Skyles & Clark on Agency, sec. 1770.

Where, however, as in this case, the authority given to the broker by the owner of the real estate does not require

a contract in writing with the purchaser, the broker is entitled to his commissions when he procures a purchaser able, ready and willing to buy, although no written contract for the sale is entered into between the owner and the purchaser.

In *Gelatt* v. *Ridge*, 117 Mo. 553, 23 S. W. 882, 38 Am. St. Rep. 683, it was said, that a real estate broker is entitled to his commissions when he procures a purchaser able and willing to buy on terms authorized by his principal, and no binding written contract of sale is required when the principal is in a situation to execute it himself.

It seems that the burden of showing that the purchaser is able, ready and willing to purchase rests ordinarily on the broker; but as we have already said in this case the readiness, willingness and responsibility of the purchaser are established by the evidence.

Where a sale has actually been completed, the difficulty of determining the rights of the principal and the broker is greatly diminished; but in this case no sale was made by the broker, and to entitle him to recover it must be made to appear that he produced to his principal a customer who was ready, able and willing to purchase upon the terms fixed by the principal, and that the sale was prevented by the wrongful and arbitrary refusal of the principal to close it on his part.

In Mechem on Agency, sec. 2432, it is said: "It was thought at one time, and still seems to be held in some states, that a purchaser had not been 'produced' within the meaning of the second rule until he had been brought face to face with the seller; but this seems not to be indispensable if there be other substantial and satisfactory evidence of his existence and his readiness and ability to purchase."

There is no doubt as to the existence of the purchaser in this case, or (as we have more than once said) of his

readiness and ability to purchase. We are of opinion, there-fore, that all of the instructions asked for by the plaintiff in error which were predicated upon the necessity of a memorandum in writing of the sale were properly rejected, and the evidence warranted the court in giving, of its own motion, instruction No. 1, which is as follows:

"If the jury believes from the evidence that Mitchell agreed with Jackson that he would give $11,000 for the land, and that Jackson made this offer to Mr. Means, and that Mitchell was ready, able and willing to take the land at that price, then the jury are instructed that Jackson was thereupon entitled to commission on the sale price."

The court also told the jury in instruction No. 2, that if they believed from the evidence "that Jackson never of-fered on behalf of Mitchell but $10,500.00, and that Means declined to sell at that price, and so told Jackson, then Jackson is not entitled to commissions." And in instruc-tion No. 3 the jury were told, that "the burden is upon Jackson to show by a preponderance of the evidence, that he made the offer of $11,000.00 on behalf of Mitchell, and that Mitchell was ready, able and willing to carry the offer into a complete purchase."

These three instructions, we think, are sufficient to guide the jury in their consideration of the evidence as applicable to this branch of the case, and that it was not reversible error to refuse to give instruction "A" as asked for by plaintiff in error.

Instruction "B" asked for by plaintiff in error and given by the court was as follows: "The court further instructs the jury that in weighing the evidence of each of the wit-nesses who has testified in this case, they should consider the accuracy of his recollection, the reasonableness and consistency of each part of his evidence with the residue thereof, and his interest in the result of this controversy,

if he is shown by the evidence to have any interest therein, and his demeanor while testifying."

And by instruction "C" the court was asked to tell the jury, that "unless for a cause or causes based upon the evidence, they have no right to disregard the evidence of any of the witnesses who have testified in this case," which the court refused to give.

The evidence in the case is contradictory and wholly irreconcilable. If the testimony of plaintiff's witnesses be true, a case was made out which entitled him to recover; if that of the defendant be true, the verdict should have been for the defendant. Juries are judges of the credibility of witnesses, but they do not exercise an arbitrary discretion, and it is the duty of the court, while not in the least intimating its opinion upon the facts, to give to the jury, either of its own motion or when requested by either of the parties, proper instructions to enable them intelligently to consider, weigh and determine the value of the testimony and other evidence submitted for their consideration.

The instruction "B" correctly and sufficiently indicates how the duties of the jury in ascertaining and determining the credibility of witnesses should be performed, and the irreconcilable contradictions and conflicts in the evidence make this case one in which it was eminently proper to give such an instruction.

We are of opinion that the case should be affirmed.

†*Affirmed.*

---

† NOTE BY THE COURT.—It is proper to state that when the opinion in this case was handed down on January 12, it appeared from the record that instruction "B" was refused by the circuit court. As soon as it came to the knowledge of counsel for plaintiff in error that the court had been misled by the record, he with a just sense of propriety brought it to the attention of the court that instruction "B" had been given, and a stipulation to that effect, signed by counsel for all the parties, was presented to the court, which removed the ground of

## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

3. EVIDENCE—*Warranty That Machinery Is Modern—Evidence That It Was Second Hand.*—Where a purchaser of machinery relies upon a breach of warranty that the machinery is "moddern, up-to-date, and strictly first class in every respect," it is permissible for him to show that it was second hand when his vendor bought it.

error upon which the case had been reversed, for while instruction "C" was refused, though it might properly have been granted, the court did not consider its refusal reversible error. As the facts of the case have been fully considered and deemed sufficient to warrant the verdict and judgment, and as the supposed error upon which the order of reversal was entered has been shown not to exist, there can be no reason for a rehearing and we have made a final disposition of the case by affirming the judgment.