## Richmond

GEORGE W. DAILEY v. FRANCIS E. STEVENSON.

March 11, 1957.

Record No. 4613.

Present, All the Justices.

The opinion states the case.

*M. T. Bohannon* (*Herbert & Bohannon*, on brief), for the plaintiff in error.

*J. Lawrence Bond*, for the defendant in error.

SNEAD, J., delivered the opinion of the court.

Francis E. Stevenson, a real estate broker, instituted action against George W. Dailey for $7,125 allegedly owing to him as commissions for securing a lessee for property owned by Dailey. He alleged that he had an oral contract with Dailey under which he was authorized to secure a tenant for Dailey's property and that he had obtained an

offer from Phillips Petroleum Company, hereinafter called Phillips, to lease the property for a stated period at $475 per month, but Dailey had wrongfully refused to execute the lease and rented the property to another tenant upon the same terms.

In his answer and grounds of defense, Dailey denied that he had ever agreed with Stevenson to lease the property upon the terms submitted by Stevenson on behalf of Phillips.

A verdict for $2,250 was rendered in favor of Stevenson, and from a judgment approving that award, we granted Dailey an appeal.

The parties will be hereinafter referred to at times as plaintiff and defendant in accordance with their positions in the trial court.

Defendant challenged the sufficiency of the evidence to support the verdict by timely motion to strike, and again before judgment by a motion to set aside the verdict because there was no evidence to support it. He now contends that the evidence fails to prove that plaintiff procured a tenant to lease his property on terms that he had authorized or that were acceptable to him.

The assignment of error requires that the evidence be stated in some detail.

Defendant owned a lot in the city of Norfolk, Virginia, for which he desired to obtain a long-term lease, and he asked plaintiff to try to secure an acceptable tenant. He stated that he would rent his lot for $500 per month, and later indicated that he might accept $475 per month.

Madeline F. Gibson owned the adjoining property, and plaintiff had also been authorized by her to act as her exclusive agent to make sale of her property. Phillips was interested in obtaining a long-term lease on Dailey's lot provided it could also lease the Gibson property, and when plaintiff learned of this, he undertook to effect sale of the Gibson property to defendant and secure an offer from Phillips to lease the combined properties. In July, 1955, he obtained an offer from Phillips to lease the real estate at $475 a month for fifteen years, with option to lease for two additional five year periods. This offer was made to Stevenson before he obtained an option for Dailey on the Gibson property, but shortly thereafter Stevenson was successful in securing an option on the Gibson real estate at a price acceptable to Dailey. When sale of the Gibson property to Dailey was finally consummated, Stevenson was paid full commissions on that sale by Madeline F. Gibson.

After Dailey acquired the option on the Gibson property, the of-

fer to lease made by Phillips through plaintiff continued in effect, but no lease was executed by defendant. At this time nothing had been said about what commissions would be paid to plaintiff if a lease was consummated, but plaintiff testified that he "took it to be five percent which was the usual commission" and that as the total rental for twenty-five years would be $142,500, his commission would be $7,125. On cross-examination he admitted that he was aware that Robert F. Ripley, another real estate broker, was attempting to lease the same property to Phillips and had presented defendant with a long-term lease at $475 a month, out of which was to be paid a commission of $25 per month, but defendant had refused to accept it.

Ripley was called as a witness by plaintiff, and he said that he was assembling some service station properties in that area for Phillips and that he was the first agent to contact defendant about leasing his property to that company. Some negotiations were carried on by one of his salesmen named Games wth defendant, and Ripley said that "Mr. Dailey told Mr. Games to get him $475 for his corner." This witness later modified that statement by saying that he secured an offer from Phillips to lease the property at the price defendant said he wanted, i. e., "$450 net to him per month with our commission, taxes and insurance above that." When asked specifically if there was "any mention of commissions," he replied by saying, "We expected to get regular commissions per month * * *", five per cent for the entire period of the lease, including the option periods. He also testified that after securing this offer from Phillips, he learned that Stevenson "was in the picture" and that Stevenson also claimed that he had secured an offer from Phillips to lease defendant's property and had asserted a claim for commissions. Thus each agent claimed that he had received an offer in keeping with his authority, but neither could say what, or if any, agreement had been reached or stated sum fixed upon to be paid to him as commissions in case a lease was consummated with Phillips.

Homer Smith, a distributor of Phillips products, testified that he conferred with Dailey about executing the lease with Phillips and presented a lease providing for $475 per month, which Dailey agreed to subject to his attorney's approval.

At this stage of negotiations when both agents claimed to be acting for defendant in attempting to lease his property to the same prospective lessee, a meeting among Stevenson, Ripley, Dailey and Smith was held in the office of Eastwood D. Herbert, defendant's attorney.

At this meeting effort was made to determine if a lease could be consummated with Phillips, and if so, what commissions were to be paid by defendant and to whom. Ripley asserted a claim for five per cent commissions on $142,500, the rental at $475 per month for twenty-five years. Though plaintiff had previously asserted that he was entitled to a similar sum, yet at this meeting in Herbert's office, he indicated that he would accept $1,000 as commissions and submitted a long-term lease at $475 per month, carrying that figure as the commission then claimed by him and to be paid by defendant. Neither Ripley nor the plaintiff claimed an exclusive agency to secure a lessee for the property.

Defendant testified that he first conferred with Ripley's salesman, Games, about leasing his property and told the salesman that he wanted $475 per month, and that Games presented him with a lease from Phillips for $450 per month, plus $25 commissions, which he declined to accept and informed Games to take the matter up with his attorney. He says that sometime later plaintiff informed him that Phillips would rent for $475 per month but plaintiff wanted a commission of $1,000, and he also then advised plaintiff to consult with Herbert. He says that he was thereafter contacted by representatives of Phillips, and he informed these gentlemen that he wanted "$475 flat". Defendant also stated that the agreement that had been prepared by Kemp, one of the representatives, was delivered to Herbert because any proposition submitted would have to be approved by his attorney. About this time defendant received a letter from Ripley, stating that Phillips was his client and that if defendant negotiated a lease with that company, Ripley would look to defendant for commissions.

Herbert testified that Dailey brought him a lease from Ripley's office that provided for a monthly rental of $475 out of which $25 per month commissions would be paid, but defendant declined to lease for that sum. Sometime later plaintiff brought a lease to his office under which defendant would be paid $450 per month, plus one cent per gallon on all gasoline sold over 40,000 gallons per month, which lease provided for a commission of $1,000 for plaintiff. Herbert was, however, notified that this lease was not acceptable to Phillips but that the company would be willing to lease for $475 per month. Shortly after this the conference was held in Herbert's office. At that time defendant was presented with two leases from Phillips, one through Ripley's office and the other from plaintiff. Both were

for $475 per month and both agents demanded commissions. Herbert advised defendant to inform the agents that they would have to come to some agreement between themselves by a stated time and if they failed to do so, that defendant would decline to negotiate further with them.

During the conference at Herbert's office or at its conclusion, Smith Phillips' distributor, indicated to defendant that he would try to get Ripley to release his claim for commissions and defendant told Smith that unless the matter was straightened out between the two agents by Friday, July 28, 1955, he would undertake to lease the property himself. Having heard nothing from either agent by the time fixed, defendant consummated his purchase of the Gibson property, and the vendor paid Stevenson his commission. Defendant then leased the property to Cities Service Oil Company on a long-term lease for $475 per month net to him. After this lease was effected with Cities Service Oil Company, defendant was notified that Ripley had released all claim for commissions.

When plaintiff undertook to explain what happened at the conference in Herbert's office and why no amicable agreement could be reached, settlement between the interested parties effected, and a lease consummated with Phillips, he said:

"I can simply add that he didn't want to pay. The whole question through the whole thing is commissions, * * *.

*   *   *   *   *   *   *

"We were trying to get together. Mr. Ripley waived his rights later because there was two of us riding the same horse."

We readily agree with plaintiff's statement that there were "two of us riding the same horse." The evidence also shows that both riders urged their mount on toward a hoped for destination, but it fails to prove that either rider was securely seated in the saddle.

A fair appraisal of the evidence leads one to the certain and inevitable conclusion that plaintiff (as well as Ripley) undertook a contract of hazard, i. e., to secure an offer to lease defendant's property upon terms acceptable to him and that defendant never agreed to accept less than $475 per month net to him. It appears most probable that at the conference held in Herbert's office had the agents been then able to agree as to a division of commissions that defendant might have been willing to have consummated a lease with Phillips

at $475 per month and pay some commissions. However, lacking agreement between the agents, he neither then nor previously committed himself to accept an offer of $475 per month less commissions in any sum.

"A broker is never entitled to commissions for failing to perform his contract. To entitle him to his commissions he must succeed, and he takes the entire risk of failure for his reward comes only as a consequence of his success. He may devote his time and labor and expend his money with ever so much devotion to the interests of the owner, and yet if he fails to procure a purchaser, abandons his efforts, or his authority is fairly and in good faith terminated, he does not earn his commissions." *Leicht-Benson Corp.* v *.Stone & Co.*, 138 Va. 511, 515, 121 S. E. 883.

"The commissions of a real estate broker are contingent, and before he is entitled to same he must prove not only that he had produced a purchaser ready and willing to buy upon the terms agreed upon but that the sale was not concluded by reason of some fault or misrepresentation of the seller." *Bear* v. *Parrish*, 148 Va. 754, 760, 139 S. E. 488.

No sum at which Dailey would lease other than $475 per month net to him was ever agreed on by him with plaintiff. Never having acceded to the offer obtained by plaintiff from Phillips, defendant was at liberty to reject it without incurring liability. *Massie* v. *Parrish*, 140 Va. 717, 125 S. E. 691; 4 M. J., Contracts, § 26, p. 358.

Stevenson undertook a contract of hazard, and having failed to produce an offer acceptable to defendant, there can be no recovery of commissions by him.

The judgment appealed from will be reversed and final judgment entered for defendant.

*Reversed and final judgment.*