## 𝕾taunton

CHARLES B. HAWTHORNE, ET AL. v. CHARLES L. HANNOWELL, T/A, ETC.

September 2, 1960.

Record No. 5119.

Present, All the Justices.

The opinion states the case.

*John Alexander* (*Lucas D. Phillips*, on brief), for the plaintiffs in error.

*Murdaugh Stuart Madden* and *Mary M. Persinger*, for the defendant in error.

SNEAD, J., delivered the opinion of the court.

The sole question raised in this appeal is whether the evidence was sufficient to support a judgment for $5,500 awarded Charles L. Han-

nowell, trading as C. L. Hannowell Co., [Hanowell] appellee, against Charles B. Hawthorne and Jean M. Hawthorne, his wife, appellants. The judgment was for commissions claimed by appellee for procuring purchasers who were ready, willing and able to buy appellants' drug store, Vienna Pharmacy, upon terms at which appellants agreed to sell.

The litigants will be referred to at times as plaintiff and defendants according to their respective positions in the trial court.

Plaintiff alleged in his amended motion for judgment that he was a realtor licensed to do business in the Commonwealth of Virginia; that defendants' business was originally listed with him for sale at a price of $105,000, including the value of salable inventory; that it was agreed he was to receive a commission of 10% of the purchase price, "less that portion of the sale price which represented the amount paid for the salable inventory", for producing a purchaser ready, willing and able to meet the terms and conditions of sale fixed by defendant Hawthorne; that he had submitted offers which were rejected because they were too low or otherwise unacceptable; that later, on May 24, 1956, he secured an offer of $50,000 plus the value of salable inventory, which was also rejected, but defendants said on or about May 26, 1956, they would accept a price of $55,000 plus the value of the salable inventory, and that the offer was revised and submitted accordingly. He further alleged that the purchasers were ready, willing and able to purchase the pharmacy upon the terms and conditions determined by defendants and their agent, Charles Hurwitz; that defendants wrongfully and without cause refused to execute the contract properly tendered to them and signed by the purchasers, and that defendants had refused to pay the commission earned by him through full performance of his contractual obligations. A photostatic copy of the proffered contract was attached to the amended motion for judgment and made a part of it.

In the contract, dated May 24, 1956, Hawthorne and his wife, parties of the first part, were designated Sellers; Reuben Miller and Herman Mendelson, parties of the second part, were referred to as Buyers, and Lois H. Miller, Attorney, was party of the third part. The instrument was executed by Miller and Mendelson and it provided:

"That for and in consideration of the sum of FOUR THOUSAND TWO HUNDRED FIFTY AND 00/100 DOLLARS ($4,250.00), by check paid herewith unto Lois H. Miller, Attorney, to be held

in escrow for and on behalf of Sellers, the receipt of which by Lois H. Miller, Attorney, is hereby acknowledged, the Sellers agree to sell and the Buyers agree to buy the following described business known as the VIENNA PHARMACY, located on Maple Avenue, in the Town of Vienna, Virginia:

"All furniture, furnishings and equipment, including the 1954 Chevrolet delivery automobile, and trade name "Vienna Pharmacy", presently used in connection with operation of the Vienna Pharmacy, Maple Avenue, Vienna, Virginia, together with the good will and accounts receivable for the sum of FIFTY-FIVE THOUSAND DOLLARS ($55,000.00).

"All salable merchandise (stock-in-trade), excluding all supplies located in the said Vienna Pharmacy, Maple Avenue, Vienna, Virginia, to be inventoried by a distinterested person, firm or corporation, the said person or firm making the said inventory to be agreed upon by the parties of the first and second part hereto, and the amount determined by the said inventory to be paid to the Sellers by the Buyers in addition to the aforesaid FIFTY-FIVE THOUSAND DOLLARS ($55,000.00), all of which is to be the total cost.

"A lease dated September 1, 1954, by and between Elmer E. Cockrill and Anne L. Cockrill, his wife, and Charles B. Hawthorne and Jean M. Hawthorne, his wife, is to be assigned to the Buyers and is to be acknowledged by the Lessors (Cockrills); a copy of said lease is attached hereto."

The agreement also provided that the total sum of $25,000 cash was to be paid at time of possession which was specified as June 1, 1956, and that the purchasers or their assigns would execute three negotiable promissory notes as follows: Two notes for $5,000 each with interest at 5% per annum, payable at maturity, and payable one and two years respectively after date, and one note representing the balance of the purchase money, bearing interest at 5% per annum, payable in monthly instalments of $450 each plus interest on the unpaid balance, and with the right to make additional payments without penalty. The notes were to be secured by a deed of trust on all furniture, equipment and merchandise located on the premises at time of settlement, which was to be June 10, 1956, on condition that the trust should in no way restrict the sale of merchandise in the usual course of business.

Other provisions were that the contract was contingent upon the assignment by Sellers to the Buyers of the existing lease on the

premises with the approval of the owners and upon the issuance of permits and licenses required by law; that Sellers warrant that they were the sole owners of the property sold, free from any liens and claims, and would save Buyers harmless from any claims which might be asserted; that Sellers would not engage in a similar business, directly or indirectly, within a radius of 5 miles of the then location of the pharmacy, and that Sellers would pay plaintiff a commission of 10% of the purchase price less the amount paid for salable inventory.

Defendants, in their grounds of defense denied, *inter alia*, that plaintiff ever presented to them a purchaser for the drug business who was ready, willing and able to purchase it upon terms and conditions acceptable to or set forth by them.

It is not disputed that Miller and Mendelson signed the contract relied upon by plaintiff; that they stood ready, willing and able to purchase the business according to its terms, and that Miller signed a check for $4,250, dated May 25, 1956, payable to Lois H. Miller, Attorney, which was introduced in evidence. A trial by jury having been waived, all questions of law and fact were submitted to the court for its determination.

In April 1956, Mrs. Frances B. Muzzioli, an agent of plaintiff, approached Hawthorne and told him that she had a client who was qualified and interested in purchasing a drug store and inquired if he was interested in selling Vienna Pharmacy. He replied that "he hardly thought so". She left with him her business card. Later during that month Hawthorne called Mrs. Muzzioli at her home and expressed an interest in the sale of the pharmacy. The conversation was brief and terms and figures were not discussed. Mrs. Muzzioli informed him that she would have Hanowell, the plaintiff, contact him immediately. Plaintiff called Hawthorne who referred him to Charles Hurwitz, his accountant. Hurwitz and plaintiff discussed the business in some detail. According to plaintiff, Hurwitz said "the price would be approximately $105,000 on a gross basis." Several offers were submitted to defendants and they were rejected. They are not material here because plaintiff's claim for commission was grounded on a later specific contract, dated May 24, 1956, hereinbefore described, the terms of which he contends Hawthorne agreed to orally. This contract originally contained the figure of $50,000 for all assets except salable merchandise, the value of which was to be determined by a disinterested person, firm or corporation. The

first page of this contract was replaced by another bearing the same date, which was identical except that it contained the figure of $55,000 in place of $50,000.

Hawthorne was called by plaintiff as an adverse witness. He testified, among other things, that the selling price he and his accountant, Hurwitz, agreed upon was $60,000 for fixtures, furniture, equipment and good will plus "dollar for dollar" value of the inventory of merchandise; that the value of the inventory, which had been averaging approximately $40,000 during the preceding 4 years, was to be paid at the time of settlement and the remainder of the purchase price was to be paid over a period not to exceed seven years, and that he did not at any time authorize plaintiff or anyone else to sell the business for $55,000 plus inventory. He said he never agreed to sell for less than $60,000 plus inventory on terms stated above.

Hurwitz said he informed Hanowell that the "terms were $60,000 for the fixtures and good will and cash for the inventory." It is not disputed that this was the original asking price.

Plaintiff testified that on May 25, 1956, he presented to Hawthorne a contract, dated May 24, 1956, which called for payment of $50,000 plus the value of the salable inventory, and upon Hawthorne's request it was left with him "to look over"; that when he returned the next morning Hawthorne told him "that it looked all right, however, he would not take less than $55,000", and that if the offer was raised to $55,000, that will "take care of it." He stated that Hawthorne then mentioned it would require a redrafting of the entire contract, to which he replied: " 'No, I don't think. If everything else is okay we will redraw the first page,' " and Hawthorne agreed it was only necessary to redraft the first page. The consent of Miller and Mendelson was obtained to raise the offer $5,000, and the first page of the contract was rewritten accordingly and delivered to Hawthorne. Plaintiff further testified:

"Q. Now, you testified that it was your understanding there were no objections to the terms or price. From what, if anything, did you draw that conclusion?

"A. From the fact we have drawn, I recall, four or five contracts representing offers or counteroffers and offers which were objectionable and returned, and then the contract submitted which I was told everything was all right except that he would not accept less than $55,000 for the store and the business and that if I got Dr. Miller to

come up another $5,000 the deal would be made, which we brought back the $55,000 offer. I am speaking of $55,000; there was only that part applying to the store business and not to the inventory. When I brought that back to him that would satisfy all of his requirements as to price and terms.

"Q. Did he say that to you?

"A. Yes, sir."

Plaintiff said that when he went to the drug store, accompanied by Mrs. Muzzioli, on May 30, 1956, the first words uttered by Hawthorne were " 'The deal is off' "; that Hawthorne appeared to be "quite upset" because one of his employees had remarked to him that he understood the store was being sold and he should be looking for a new position; that Hawthorne said he knew who disclosed the information and he was going to show " 'that loud-mouthed * * *, Mrs. Miller, her source wasn't so reliable as she thought' ". Plaintiff asked him if the only reason he was not going through with the deal was because " 'of Mrs. Miller mixing in it' " and he replied, " 'Yes' ". He then asked Hawthorne, in an effort to save the deal, would it be satisfactory if Mrs. Miller " 'backed out as escrow agent' " and he said, " 'No, she has already done the damage as far as I am concerned' ". After informing Hawthorne they had brought him a buyer in accordance with his terms, the conference ended.

Hanowell said he and Morris S. Cammack, one of his employees, went to see Hawthorne on or about June 6, 1956, in response to a telephone call and inquired "if he was ready to reconsider the matter"; that he replied, " 'No, tell Reub [Miller] to let the matter lay dormant for a while and I think we will be able to get something straightened out, if I could get this mess straightened out with Mrs. Miller' "; that when he informed Hawthorne he was entitled to his commission, Hawthorne remarked: " 'If you want the commission I suggest you sue Mrs. Miller. She was the one who upset it, and I will be glad to assist you any way I can' ", and that when he again asked if Mrs. Miller's actions were the only reason he was not concluding the sale, Hawthorne replied: " 'Yes. There was nothing wrong with the contract. That is all. She is the one that loused your deal.' "

Plaintiff also testified that Hawthorne had agreed orally to pay him a commission of 10% on the purchase price, excluding the sum for salable inventory, if he found a purchaser for the business.

Mrs. Muzzioli stated she went with plaintiff on Saturday evening prior to Memorial Day to deliver the rewritten first sheet of the

contract, which contained the figure of $55,000, and Hawthorne re-marked: " 'I'm glad that we finally come to terms and we can close the deal.' " Hawthorne inquired if plaintiff had any objections to his attorney looking over the contract, and plaintiff said that he had none. She stated that her next contact with Hawthorne was on Memorial Day, or May 30, 1956, when she and plaintiff went to "pick up the contracts". She substantially corroborated plaintiff's testimony with regard to this conference at which time they were informed the deal was off.

Cammack, who was with plaintiff at the conference on or about June 6, 1956, testified that Hawthorne stated the reason he was not going through with the deal was Mrs. Miller's "interference and advance publicity" of the transaction.

In *Bear* v. *Parrish*, 148 Va. 754, 760, 139 S. E. 488, it was said:

"* * * The commissions of a real estate broker are contingent, and before he is entitled to same he must prove not only that he had produced a purchaser ready and willing to buy upon the terms agreed upon, but that the sale was not concluded by reason of some fault or misrepresentation of the seller. * * *". See *Dailey* v. *Stevenson*, 198 Va. 786, 791, 96 S. E. 2d 761.

In *Richeson* v. *Wilson*, 187 Va. 536, 544, 47 S. E. 2d 393, we observed:

"Ordinarily, the undertaking of a real-estate broker is to procure a purchaser ready, willing and able to buy the property at the terms stipulated by the owner. When the broker does this he has earned his commission. In case of such an undertaking, unless his agreement with the owner so provides, the broker is not required to procure a written contract signed by the purchaser as a condition precedent to his right to recover commissions (*Low Moor Iron Co.* v. *Jackson*, 117 Va. 76, 81, 82, 84 S. E. 100), nor does his right to compensation depend upon a consummation of the sale (*Massie* v. *Firmstone*, 134 Va. 450, 455, 114 S. E. 652)." See also *Snider* v. *New River Ins., Etc., Corp.*, 187 Va. 548, 552, 47 S. E. 2d 398.

The evidence was conflicting, and since the trial court heard it *ore tenus*, its findings on questions of fact carry the same weight as that of a jury, and consequently all conflicts in the evidence have been resolved in favor of plaintiff, the prevailing party in the court below. Such determinations will not be disturbed unless plainly wrong or without credible evidence to support them. Section 8-491,

Code 1950; *County Board* v. *Town of Fairfax,* 199 Va. 612, 617, 101 S. E. 2d 519, and cases there cited.

Plaintiff was positive in his testimony that Hawthorne agreed orally to the terms and conditions of sale set forth in the contract in question which was executed by the purchasers; that Hawthorne stated there was nothing wrong with the contract and the only reason he had for not going through with the sale was Mrs. Miller's actions. Mrs. Muzzioli testified that when the rewritten first page of the contract which embodied the figure of $55,000 was delivered to Hawthorne he remarked: " 'I'm glad that we finally come to terms and we can close the deal.' " Cammack testified Hawthorne said at a conference on or about June 6, 1956, that his only reason for not consummating the sale was the "interference and advance publicity" of the transaction by Mrs. Miller. The fact that plaintiff had no objections to Hawthorne's attorney looking over the contract is not controlling, because plaintiff's evidence shows that Hawthorne had already agreed to its terms and conditions.

We cannot say that the evidence on behalf of plaintiff was incredible or that the conclusions reached by the court are plainly wrong. The evidence was sufficient to support the court's findings that plaintiffs had produced a purchaser ready, willing and able to buy the drug store on terms and conditions acceptable to defendants; that the sale was not consummated due to the arbitrary or capricious action of defendant, Hawthorne, and that plaintiff was entitled to a commission in the sum of $5,500.

We find no error in the judgment appealed from, and it is affirmed.

*Affirmed.*