# Richmond

## ETHEL E. WARE v. LLOYD W. WARE.

January 15, 1962.

Record No. 5344.

Present, Eggleston, C. J., and Buchanan, Whittle, Snead, I'Anson and Carrico, JJ.

*Harold H. Purcell* and *George P. Smith, Jr.,* for the appellant.

*R. P. Zehler, Jr.,* for the appellee.

EGGLESTON, C. J., delivered the opinion of the court.

Ethel E. Ware, sometimes hereinafter called the plaintiff, filed her bill of complaint in the Circuit Court of Fluvanna county against Lloyd W. Ware, hereinafter referred to as the defendant, praying that a decree entered by the same court on September 28, 1959, granting the defendant a divorce *a mensa et thoro* from her on the grounds of cruelty and constructive desertion be set aside and annulled, because, she alleged, it had been procured by the fraud of the defendant perpetrated upon her and the court.

The principal acts of the defendant which the plaintiff alleged constituted fraud in the procurement of the decree were: (1) that immediately after the service on her of the process commencing the divorce suit and the notice of the taking of depositions therein, the defendant told her that the allegations in the bill were "untrue," that she "should just disregard them," that "he had no intention of seeking a divorce" from her, and that she should "forget the whole matter;" and (2) that after this incident, while the defendant had rented a room in a near-by local hotel, he came to their home daily, had his meals there, frequently slept there, resumed marital relations and cohabited with her; that "by his every word, act and deed" he led her "to believe that they were man and wife and that he wished, desired and intended to remain lawfully married" to her; and that "at no time did he state" to her "that he intended to proceed with the divorce proceeding," but on the contrary led her to believe that it "had been dropped."

She further alleged that these acts and conduct of the defendant induced her not to contest the divorce proceeding, and in so doing he perpetrated a fraud upon her and the court as the result of which the decree of divorce was obtained.

The defendant husband filed an answer in which he denied that he had said or done anything to induce the plaintiff not to contest the divorce proceeding. On the contrary, he alleged, he "advised" her that she should consult an attorney about the matter.

After hearing the evidence *ore tenus* the lower court entered a decree finding that the plaintiff had "failed to prove her case" and

accordingly dismissing her bill of complaint. The plaintiff has appealed, claiming in substance that the decree is contrary to the law and the evidence and without evidence to support it.

The undisputed facts are these: The couple was married on October 4, 1957. Both were then thirty-eight years old and had been previously married and divorced. After this marriage they resided in Fluvanna county where the husband was plant superintendent of a local pulp mill. The wife was a trained beautician and continued her trade at their residence. A daughter was born of the marriage on June 4, 1958.

There is evidence that both the husband and the wife were emotionally unstable and that the marriage was not a happy one. On July 8, 1959, the husband left home because, he said, the child "got on his nerves" and he wanted "some rest." He first secured a room at a near-by boardinghouse and later moved to a local hotel. On July 31 the wife swore out a warrant charging him with nonsupport and desertion, but the charge was withdrawn and the warrant dismissed before trial. Despite the separation, the husband daily came to the former home, contributed to its upkeep, and frequently took his meals there.

On August 17, 1959, the husband filed in the court below a bill of complaint against his wife, praying for a divorce on the grounds of cruelty and constructive desertion. He alleged that on July 8 he had left their home because of the wife's unbearable conduct toward him. He further alleged that it was agreeable to him that the wife retain the custody of their daughter.

Process, consisting of a subpoena to which was attached a copy of the bill of complaint, was served on the defendant wife in person by the sheriff of the county on August 25. At the same time the sheriff served on the wife a notice that depositions on behalf of the husband would be taken before a notary public at a stated time and place.

The wife made no appearance and filed no answer to the bill, nor was she present or represented by counsel when the depositions on behalf of the husband were taken on September 10 and 18. On September 28, upon consideration of the bill and depositions taken, the court entered a decree awarding the husband a divorce *a mensa et thoro* on the grounds of cruelty and constructive desertion. The custody of the child was continued with the wife, but there was no provision for the support or maintenance of either.

Notwithstanding the divorce proceeding, the husband continued his daily visits to and financial support of the home until March, 1960, when, through his counsel, he notified Mrs. Ware that he would make other arrangements for the support of her and the child. In the meantime, in September and December, 1959, he had procured two policies of insurance on his life, designating as the beneficiary in each "Ethel E. Ware—Wife." On September 24 they had executed a deed as husband and wife.

On April 4, 1960, pursuant to written notice, the wife filed a motion for the entry of an order permitting her to file an answer and cross-bill in the suit and fixing alimony and support money for the infant child. On June 27, pursuant to written notice, she filed a motion praying that the divorce decree be set aside and declared null and void on the ground that the depositions had been taken prematurely. On the latter date the lower court entered an order directing the husband to pay $100 per month for the support and maintenance of the child. At the same time it entered another order overruling the wife's prayer that the divorce decree be set aside.

In the meantime, on May 5, 1960, the wife had filed her bill in the present suit praying that the decree be set aside on the ground that it had been procured by fraud. In the present appeal we are not concerned with whether the evidence was sufficient to support the decree of divorce in the original suit. Our only concern is whether the lower court erred in not setting aside that decree on the ground that it was procured by fraud.

■ On the specific issue whether the divorce was procured through the fraud of the defendant husband the evidence is in hopeless conflict. With reference to her first charge of fraud, the wife testified that after the sheriff had served the divorce papers on her and had left, as she prepared to read the papers her husband said to her, "There is no use reading those papers. * * * There are lots of things in them that are not true. You can just destroy them." She said that she immediately burned the papers in his presence. She further testified that she did not "understand" the nature of the papers since there had been no discussion of a divorce between them. Furthermore, she said, she had no knowledge of the pendency of the divorce proceeding, or that the decree had been obtained, until the following March or April. "I thought the matter was dropped as of the night of the papers being served," she said.

The husband and the sheriff both testified that at the time the papers were served on Mrs. Ware the sheriff told her that she had twenty-one days within which to answer them and that she "should get an attorney to take care of things for her." The defendant husband further said that Mrs. Ware read the papers and said that she "didn't intend to contest this divorce." He denied that he had told her that the allegations in the bill of complaint were untrue or that the proceeding would be withdrawn. On the contrary, he said that he then told her that she had twenty-one days within which to answer the proceeding and suggested that she see an attorney about the matter.

The finding of the lower court which saw and heard the witnesses testify has resolved in favor of the defendant husband the conflict in the evidence on this phase of the case. We cannot say that that finding is plainly wrong or unsupported by the evidence. The sheriff was a disinterested witness and we see no reason why the court should have rejected his testimony as untrue. Moreover, it is difficult to accept as true the testimony of the wife that she did not read the divorce papers which had been served on her and did not understand their import. She is an experienced businesswoman and the reading of her testimony shows that she is a person of intelligence. Having been previously divorced she was no novice in such a proceeding. It would seem that natural curiosity would have prompted her to read the papers and see what charges her husband was making against her.

We reach the same conclusion with respect to the other contention of the wife that the husband's conduct pending the divorce proceeding led her to believe that the suit had been abandoned or withdrawn. In substance, her contention is that by resuming marital relations with her he condoned her offenses which prompted him to sue for divorce and thereby led her to believe that it was unnecessary for her to appear and make defense to the suit.

It is true that, "Cohabitation between husband and wife during the pendency of the suit for divorce is considered a sufficient reason for the defendant's belief that plaintiff spouse had abandoned the suit, and a justification for not appearing to make a defense." Annotation, 157 A. L. R., at page 75. See also, Annotation, 22 A. L. R. 2d, at page 1332; *Tarr* v. *Tarr*, 184 Va. 443, 35 S. E. 2d 401. But where, as here, it is sought to set aside a decree on the ground that

during the pendency of the divorce action the spouse who obtained it had condoned the other's offenses by cohabiting as before, "the burden of proving such cohabitation and condonation rests upon the assailant of the decree." 17 Am. Jur., Divorce and Separation, § 489, p. 590. This is upon the principle that he who alleges fraud has the burden of proving it.

In this jurisdiction we have frequently said that an allegation of fraud must be affirmatively proved by evidence which is "clear and convincing." 8 Mich. Jur., Fraud, § 55, p. 744; *Id.*, § 61, pp. 751, 752; 10 Va. and W. Va. Digest (West), Fraud, § 58(1); *Taylor* v. *County Board of Arlington Co.*, 189 Va. 472, 486, 53 S. E. 2d 34, 40; *Wolford* v. *Williams*, 195 Va. 489, 498, 78 S. E. 2d 660, 665.

In the present case the wife testified that after her husband left home on July 8, 1959, he daily returned to the home, supplied food for the household, had his meals and frequently spent the night there, and continued normal marital relations with her. Moreover, she said, they continued to live together as man and wife before and after the divorce papers were served on her, and that during all of this time he made no mention of the pending divorce proceeding.

The wife produced a number of witnesses, including servants of the household, a local minister, and others who testified that throughout the summer and fall of 1959 and pending the divorce proceeding she and her husband appeared to be living normally together as man and wife. A letter written by the husband's mother to Mrs. Ware on November 17, 1959, indicated that the mother thought that the couple was leading a normal life. However, only a single witness other than the plaintiff wife testified that the husband spent the night there after the separation on July 8. Mrs. Taggert testified that as the guest of Mrs. Ware she spent the night of November 14 or 15 in the home and that the husband spent that night there. But, she said, he "didn't go to bed" and was "up all night arguing" with Mrs. Ware. It was apparent to this witness that relations between the couple were not normal. Moreover, this was nearly two months after the divorce decree had been entered.

Although the husband admitted that during the pendency of the divorce proceeding he daily visited the former home and frequently had meals there, he testified that this was on account of his affection and concern for the child and because his wife had told him that this was for the best interest of the child. But he categorically denied that he had resumed marital relations with his wife after the

commencement of the divorce proceeding. While he testified that he spent the night at the home with the child in November, 1959, at which time his wife was at the hospital, he said that at no time after the separation in the previous July did he spend the night there while she was at home.

The husband further testified that he said or did nothing to lead his wife to believe that the divorce proceeding had been abandoned. On the contrary, he said, he told her on "innumerable occasions that a divorce existed between" them, and that this usually resulted in a violent argument. He admitted that he had not discussed the divorce proceeding with anyone other than Mrs. Ware. He said that the insurance policies which he had taken out were for the benefit of the child and that he named Mrs. Ware, his wife, as beneficiary therein because he had been advised "by the insurance companies" that the policies could not be otherwise carried for the benefit of his small daughter.

It thus appears that resolving the conflicts in the evidence in favor of the defendant husband, as the lower court has done, there is ample evidence to support its finding that the husband did not resume marital relations with the wife pending the divorce proceeding, thereby condoning her offenses and leading her to believe that the proceeding had been abandoned.

We have many times said that upon a hearing before a judge without a jury his finding upon the credibility of the witnesses and the weight to be given their testimony stands on the same footing as the verdict of a jury and should not be disturbed on appeal unless plainly wrong or without evidence to support it. 1 Mich. Jur., Appeal and Error, § 278, pp. 709, 710; *Id.*, § 280, pp. 711, 712, and cases there cited. Here the trial judge has found upon conflicting evidence that the plaintiff wife has not sustained her charge that the divorce decree was procured by the fraud of the husband. We cannot say that that finding is plainly wrong or unsupported by the evidence.

It will be observed that much of the evidence relied upon by the plaintiff wife relates to matters which occurred after the entry of the decree of divorce on September 28, 1959. While such matters may have induced her to believe that no such decree had been entered, they could not have induced her to refrain from contesting the proceeding which is the crux of her case.

Accordingly, the decree appealed from is

*Affirmed.*