## Richmond

PAUL REIBER v. JAMES M. DUNCAN, JR., AND ASSOCIATES, INC., ET AL.

November 29, 1965.

Record No. 6038.

Present, All the Justices.

*Paul Reiber*, for the plaintiff in error.

*Martin V. B. Bostetter, Jr.*, for the defendants in error.

SNEAD, J., delivered the opinion of the court.

This is an appeal by defendant, Paul Reiber, from a judgment entered against him by the court below, trying the case without a jury, in favor of plaintiffs, James M. Duncan, Jr., & Associates, Inc., and Routh Robbins Real Estate Corporation, for a real estate commission in the amount of $1,680.

Defendant contends that (1) the evidence is insufficient to support the finding that plaintiffs produced a purchaser ready, willing and able to purchase the property listed; (2) plaintiffs' agent was guilty of fraud and misrepresentation in procuring the sales contract; (3) he was entitled to a new trial on the ground of after-discovered evidence; and (4) he should have been permitted, after judgement, to take the depositions of the purported purchasers under the provisions of § 8-316, Code of 1950.

The evidence, which comes to us in narrative form, shows that on May 17, 1962, defendant signed a listing agreement with Routh Robbins Real Estate Corp., giving it the exclusive right for a period of 120 days, to obtain a purchaser for a certain apartment building located in Alexandria, Virginia, which he owned jointly with his wife. The contract listed the sale price at $28,500, and provided that the listing be distributed through the multiple listing service to all member brokers.

As a result of the listing a member broker, James M. Duncan, Jr., & Associates, Inc., one of the plaintiffs herein, acting through its

agent, Marilyn J. Hansen, presented to the defendant and his wife, on behalf of D. W. Smith and wife, a written offer of $25,000, which they rejected; however, they indicated at the time that an offer of $28,000 would be acceptable. When the offer was later raised, on June 2, 1962, to $28,000, it was accepted and the contract was signed by the defendant.

The contract provided that defendant would reshingle the roof of the building and replace certain gutters; that purchasers make a down payment of $8,000 and they would arrange to finance the balance; and that the sale was contingent upon inspections of the property to be made by the purchasers and the city inspector. The date of settlement was fixed for July 1, 1962, or as soon thereafter as the title could be examined and the papers prepared.

Mrs. Hansen, agent of the Duncan company, inquired of the defendant, after he had signed the contract, when Mrs. Reiber would be available to sign it, to which defendant, an attorney, replied that it was not necessary to obtain his wife's signature.

The attorney employed to examine the title and to handle the settlement testified that he had contacted defendant relative to some defect in the title but it had been corrected; that the purchasers had notified him that they were ready to consummate the sale and requested a date be fixed for settlement; that he advised defendant of his communication with the purchasers and requested that a date be fixed for settlement; and that the contingencies in the contract permitting certain inspections to be made were for the benefit of the purchasers, and they had either been satisfied or waived.

Mrs. Hansen contacted the Reibers several times between June 2 and early September, 1962, relative to the day of settlement and they did not indicate to her on any of those occasions that they would not comply with the contract. She first learned in the early part of September, 1962, that the Reibers were not going to convey title to the property, and when she called to inquire about the matter defendant advised her that he had painted several rooms in the building, had put in new furniture, and had decided not to sell. She also said that she had successfully assisted the purchasers in arranging for the payment of the balance of the purchase price through a loan from a savings and loan association; that she knew of no reason why the purchasers were not ready, willing and able to purchase the property; and that in order to expedite the settlement she had obtained a bid of $288 for replacing the roof of the building.

Defendant denied he told the agent that it was unnecessary to obtain his wife's signature on the contract. He said that Mrs. Hansen misrepresented to him at the time he signed the contract that she had obtained a bid of $200 for the work required under the contract, but she never submitted it to him; that the lowest bid he had been able to obtain for the work was $400; that the settlement attorney advised him in June that the title was not satisfactory and the sale could not proceed; that he heard nothing further from the attorney until September, 1962, asking him for further data relative to the title; that he later called the attorney and told him that his wife had not signed the contract and that he did not intend to proceed with the sale; that he had not been told by the purchasers they were ready, willing and able to consummate the sale; that only the real estate agent and the settlement attorney had demanded settlement; that a date had not been fixed to close the transaction; and that the purchasers had not tendered the purchase price. He admitted that he had never told anyone that he was not going through with the sale until after the settlement attorney advised him in early September that the purchasers were ready for settlement.

The defendant first asks a reversal of the judgment on the ground that the evidence does not support the finding of the trial court that the plaintiffs had produced a purchaser ready, willing and able to buy the property.

It is the established rule in Virginia that when a case at law is decided by the court without the intervention of a jury, and the judgment is excepted to on the ground that it is not supported by the evidence, on review to this Court the judgment of the trial court is presumed to be correct, even though the evidence is in sharp conflict, and it is to be given the same effect as the verdict of a jury settling all conflicts in the evidence. Hence the judgment will not be disturbed unless it is plainly wrong or without evidence to support it. *Hawthorne* v. *Hannowell*, 202 Va. 70, 76, 115 S. E. 2d 889, 893; Section 8-491, Code of 1950; 1 Mich. Jur., Appeal and Error, §§ 276, 278, pp. 705, 706, 709, and the numerous cases there cited.

Generally, when a real estate broker, pursuant to a valid listing agreement, procures a purchaser for a listed property ready, willing and able to buy upon the terms defined by the owner, then the agent is entitled to his commission. The fact that the sale is not consummated does not deprive the broker of the right to receive his commission unless the failure to consummate is due to some fault

of the broker. *Price* v. *Francis*, 184 Va. 484, 489, 35 S. E. 2d 823, 825; *Kingsland Land Corp* v. *Lange*, 191 Va. 256, 261, 262, 60 S. E. 2d 872, 874; *Parker* v. *West*, 191 Va. 710, 714, 715, 62 S. E. 2d 862, 864; *Hawthorne* v. *Hannowell, supra,* 202 Va. at p. 76, 115 S. E. 2d at p. 893.

*Price* v. *Francis, supra,* is quite similar to the present case. There Price contracted in writing with Francis, a broker, to find a purchaser for certain property owned jointly with his wife. Price's wife did not sign the listing agreement. Thereafter Francis obtained a signed contract from a purchaser but Price and his wife refused to sign the contract of sale. In an action filed by Francis against the Prices, the trial court entered judgment on a jury verdict against Price and in favor of the wife. On appeal to this Court, Price contended that the listing agreement was delivered to Francis on the condition that his wife would sign the contract, and since she had not signed the listing agreement Francis could not recover against him. Francis contended that no such condition was imposed, and that his agreement with Price was one for personal service rendered and was in no way dependent upon the ownership of the property. We upheld the judgment against Price on the grounds that the issue of conditional delivery of the agreement was one of fact, which had been decided adversely to him on conflicting evidence, and that one who employs a broker to find a buyer, and the broker has procured a qualified purchaser, is liable for commissions regardless of the nature of his interest in the property, or even if he has no interest in it whatsoever.

Here the Duncan company produced qualified purchasers, and it was not through any fault on its part that the sale was not consummated. The delay in settlement was due to a defect in defendant's title, but time was not made of the essence in the contract. The action of the purchasers, acting through the settlement attorney, requesting that a settlement date be fixed, clearly indicated that either the inspections of the property had been made or they had waived their rights under the contract. Defendant conceded that the purchasers had a right to waive the inspection by the city inspector, and such waiver would eliminate any question of the lack of mutuality of the contract. It was not until after the defendant had been notified that the purchasers were ready for settlement that he stated he was not going through with the sale because his wife had not signed the contract. Plaintiffs' right to a commission was not dependent upon

the nature of defendant's ownership in the property. Defendant's liability to plaintiffs became fixed when they produced purchasers ready, willing and able to buy the property pursuant to the terms of the contract of sale.

Defendant argues that the purchasers had not tendered the purchase price and thus plaintiffs had not produced a purchaser ready, willing and able to buy the property. This argument is without merit. Defendant had made it known that he was not going to consummate the sale after being advised the purchasers were ready for settlement, and they were not required to tender the purchase price under the circumstances. The law does not require one to do a vain thing. See *Two-Way* v. *GWETA*, 206 Va. 110, 116, 141 S. E. 2d 742, 746; 18 Mich. Jur., Tender, § 13, p. 463, and cases there cited.

Hence the finding of the trial court that the evidence was sufficient to show plaintiffs had produced a purchaser ready, willing and able to buy the property is amply supported by the evidence.

■ Defendant next argues that Mrs. Hansen was guilty of fraud and misrepresentation in procuring the contract. He says he was induced to sign the sales contract by Mrs. Hansen's untrue statement that she had obtained an estimate of $200 to replace the roof and repair the gutters, and that this constituted fraud and misrepresentation since she was his agent and was acting in a fiduciary relationship.

The burden is upon him who alleges fraud to prove it by clear, cogent and convincing evidence. *Ware* v. *Ware*, 203 Va. 189, 194, 123 S. E. 2d 357; 8 Mich. Jur., Fraud and Deceit, § 56, pp. 744, 745.

Mrs. Hansen's evidence on this question is in sharp conflict with that of the defendant. She in effect said that she made no such representation but she did obtain a price on replacing the roof after the contract was signed by the defendant solely for the purpose of expediting the closing. But even if she did tell the defendant that the work could be done for $200, the statement amounted to no more than an estimate and he did not place enough reliance on it to ask her for the bid.

The question presented was a factual one which the trial judge decided adversely to the defendant on conflicting evidence, and under settled principles his findings will not be disturbed by us. Code § 8-491, *supra;* 1 Mich. Jur., Appeal and Error, §§ 276, 278, pp. 705, 706, 709, *supra.*

■ Defendant's motion for a new trial was based on two affi-

davits sworn to and filed by him to the effect that the purchasers had not been advised that the city inspector had inspected the building and that there was no record in the city building inspector's office of any inspection having been made. Thus, he argues that the court erred in not granting him a new trial on the basis of the after-discovered evidence affidavits, since they show that one of the contingencies set out in the contract had not been met and the purchasers were not ready, willing and able to buy the property.

The general principles governing the granting of motions for new trials on the ground of after-discovered evidence are well settled in Virginia. Motions for new trials based on this ground are addressed to the sound discretion of the trial judge and are awarded with great reluctance and with special care and caution. The evidence must (1) appear to have been discovered since the trial; (2) be such that in the exercise of reasonable diligence on the part of the applicant it could not have been secured at the former trial; (3) not be merely cumulative, corroborative or collateral; and (4) be material in its objects, and such as on another trial ought to produce opposite results on the merits. Burks Pleading and Practice, 4 ed., Motions After Verdict, § 324, p. 602.

While the above requirements constitute the general rule relating to applications for a new trial on the ground of after-discovered evidence, exceptional cases have arisen and we have found it necessary to depart from the general rule and grant a new trial when there is grave doubt as to the correctness of a verdict and it seems probable that the newly discovered evidence would bring about a different result before another jury. Burks Pleading and Practice, 4 ed., *supra; Independent Cab Association* v. *LaTouche*, 197 Va. 367, 376-379, 89 S. E. 2d 320, 327, 328. Cf. *Rountree* v. *Rountree*, 200 Va. 57, 66, 104 S. E. 2d 42, 48-50.

A new trial will not be granted on the ground of after-discovered evidence when the evidence is known before the trial but omitted simply because witnesses were thought to be adverse. *Norfolk and Western Railroad Co.* v. *Draper*, 90 Va. 245, 247, 17 S. E. 883, 884.

Defendant concedes that under the general rule he was not entitled to a new trial, but he says that in the instant case the affidavits filed by him indicate that the evidence on the material question of whether plaintiffs had presented a purchaser ready, willing and able to buy the property was "fabricated or mistaken," and the exception to the general rule should be applied here.

We do not agree with defendant's contention. The affidavits filed by him do not dispute the testimony of the settlement attorney that the purchasers had indicated to him that they were ready, willing and able to settle the transaction and requested that a date be set for settlement. Nor do the affidavits even vaguely suggest that the purchasers had not waived their right to have the building inspected by a city inspector.

Defendant says the trial court erred in quashing his notices to take the depositions of the purchasers after the judgment was rendered, thereby preventing him from taking and preserving their evidence under the provisions of § 8-316, Code of 1950.

Plaintiffs say the statute is not applicable in the instant case because it applies only in chancery cases. It is not necessary for us to decide whether the statute is applicable here, since we have already pointed out that the evidence defendant expected to elicit from the purchasers would not entitle him to a new trial. The evidence sought could have been of value to the defendant only if we reversed the judgment.

Hence, in the light of our opinion to affirm the judgment, the action of the trial court in quashing defendant's notices to take the depositions of the purchasers after the judgment was not prejudicial to him. But even if it was error, about which we express no opinion, it was harmless error and not reversible error.

For the reasons stated, the judgment is

*Affirmed.*