## Richmond

### WILLIE F. SPENCE v. HERMAN J. SPENCE, ET AL.

November 29, 1971.

Record No. 7502.

Present, Snead, C.J., I'Anson, Carrico, Gordon, Cochran and Harman, JJ.

*J. C. Hutcheson*, for plaintiff in error.

*Frank D. Harris* (*Harris & Matthews*, on brief), for defendants in error.

I'ANSON, J., delivered the opinion of the court.

Plaintiff, Willie F. Spence, owner of a certain tract of land lying in Brunswick County, instituted this action under Code § 8-836, as amended, 1957 Repl. Vol., against the defendants, Herman J. Spence; Irene Spence; Lavinia Agnes J. Palmer, in her own right and as guardian of Robert Rivers Jones, V, an infant; J. C. Palmer; and Ophelia J. Child, owners of adjacent land, to have the court ascertain and fix the boundary lines of the property devised to him by F. B. Spence as those shown by heavy black lines on the rough sketch attached hereto, which was plaintiff's exhibit B-1.[1]

---

1. The sketch did not show "Old Lumber Road," the "Spence Cemetery" and the "Old Well," as shown on other rough sketches filed in the record, and the author of this opinion added those landmarks and inserted the word "Fence" by the line marked "X".

COMPOSITE SKETCH OF LAND AFFECTED: EXHIBIT B-1

The properties involved were originally part of a 202-acre tract of land owned by F. B. Spence, who died testate in 1939. By the terms of his holographic will, dated April 24, 1935, Spence devised all the land to his wife, Lucy C. Spence (now deceased), for life, and at her death:

(1) "* * * to my son, Willie F. Spence all that certain lot or parcel of land beginning at the corner of N. S. Jones farm on the Pennington Bridge road running southeast down N. S. Jones line to fence, then up said fence north to the Pennington bridge road thence up said road to the beginning and contains fifteen acres by estimate."

(2) The residue of the land to his son Herman J. Spence.

The trial judge, trying the case without a jury, in a letter opinion and a subsequent memorandum opinion, fixed the boundary lines of

plaintiff's property as beginning at the corner of N. S. (now Thomas D.) Jones' farm on Pennington Bridge Road, running southeast along the N. S. (now Thomas D.) Jones line to the fence described in the evidence as the Dincie Clary fence; thence up said fence northerly to a point where it intersects another fence marked "X"; thence westerly along said fence X to a point; thence north along fence X to Pennington Bridge Road; thence up said road westerly to the point of beginning. A more complete description, with courses and distances, is shown by a survey prepared by J. L. Lynch, C.L.S., at the direction of the trial court and made a part of the court's final order.

Plaintiff assigned several errors to the judgment of the trial court in his petition for a writ of error, but the writ granted by us was limited to the sole question of whether the evidence was sufficient to support the judgment.

Plaintiff contends that the Woods fence, not the Dincie Clary fence, is the one referred to in his father's will as the eastern boundary line of his property. He concedes that "in the absence of other evidence, the Dincie Clary fence would be the logical selection for the simple reason that in following the description in the will it would be the first to be reached, and its connection with fence X was the vehicle to carry it continuously back to the Pennington Bridge Road."

The disputed areas claimed by plaintiff as a part of his 18.45-acre tract are shown on the sketch filed herein as follows: (1) all of the 5-acre tract shown by verticle lines; and (2) the portion of the 7.56-acre tract shown by horizontal lines lying south of the "Path to House." Those portions of both the 7.56-acre and 18.45-acre tracts lying north of the "Path to House" were ceded by plaintiff to Herman J. Spence at the trial in the court below.

The Dincie Clary fence, which the trial court held was the fence referred to in testator's will, was built in 1930 and the testator assisted Clary in building it. It runs northerly from the Jones property line and connects with fence X.

Fence X crosses the Old Lumber Road south of the Spence cemetery. It proceeds in a westerly direction to a point, then turns to a northerly course and runs to Pennington Bridge Road.

The evidence shows that a road, commonly known as the Old Lumber Road, ran in a northerly direction from the Thomas Jones property line along the eastern boundary of the land claimed by plaintiff to Pennington Bridge Road. There was evidence that for a number of years there had been a wire fence, known as the Woods

fence, running northerly along or near Old Lumber Road, intersecting fence X at a point south of the Spence cemetery, and continuing in a northeasterly direction to the "old well." Remnants of the fence could be seen at the time this case was tried. The witnesses, however, were not in agreement as to whether the Woods fence was on the eastern or western side of the road and whether it stopped at the "old well" or continued to Pennington Bridge Road.

Plaintiff testified that the Woods fence ran northerly from the Jones line along the eastern side of Old Lumber Road and stopped at the "old well." He had "no idea where the fence went from there." At one time there was a temporary fence running north from the "old well" to the Pennington Bridge Road, but it was not in existence when his father wrote his will. He said a plat of the property made at his request by J. L. Lynch, a surveyor, in August 1956, shows his eastern boundary line as beginning at the Jones line and running north to Pennington Bridge Road. Plaintiff conceded, however, that the plat was incorrect because the land lying between the "Path to House" and Pennington Bridge Road, as shown on exhibit B-1, was owned by his brother, Herman Spence. His brother, Herman, recognized the Woods fence as the dividing line of their properties, since he did not cut any timber on the west side of the line. Plaintiff also conceded that fence X was the only "stationary" fence that ran northerly to Pennington Bridge Road.

Dincie Clary, who lived on the Spence farm for thirteen years, testified that during the spring of 1935 he rebuilt that portion of the Woods fence running northerly from the Jones line to fence X. While he was engaged in the work Mrs. Lucy C. Spence, wife of the testator, came on the scene and complained to her husband that he was throwing away money. The testator then put his cane on the wire and said, "This will be the line between Dick [Herman J. Spence] and Willie [the plaintiff]."

J. L. Lynch, called as a witness for the plaintiff, testified that when he made the survey and plat of the property in 1956, plaintiff told him that the eastern line of his property was the path identified as the Old Lumber Road. Lynch was told by plaintiff to run the line along the center of the path from the Jones property northerly to Pennington Bridge Road. Plaintiff made no reference to any wire fence or remnants of an old fence and Lynch did not see any along the road. On the day before the trial of this case in the court below, Lynch went with Dincie Clary on the property to have Clary point out to him the

line plaintiff claimed was the eastern boundary of his property. Clary showed him the path, or Old Lumber Road, as the line. He neither mentioned any fence nor showed him the remnants of any fence as the line.

Herman J. Spence, who was 52 years of age at the time this case was heard, testified that during his memory there had never been a fence along Old Lumber Road. The Dincie Clary fence was the only one that ran from the Jones line north, connecting with fence X, and running on out to Pennington Bridge Road. He admitted that he cut timber up to the east side of Old Lumber Road, but said the only reason he stopped there was that he could get better timber at other places on his farm.

Agnes J. Palmer testified that when she purchased the 5-acre tract, shown as parcel 2 on exhibit B-1, from Herman Spence and his mother, Lucy C. Spence, the widow of the testator, Mrs. Spence told her that the fence running along the western boundary of her parcel was known as the Dincie Clary fence.

The trial judge, after hearing the evidence, and without objection from any party, indicated that he would like to make an inspection of the property to aid him in fixing the boundary lines. When he visited the property, Thomas Jones, who had been designated by counsel for the plaintiff, accompanied him.

[█] The rule in Virginia is that when a case in law is decided by the court without the intervention of a jury, and the judgment is excepted to on the ground that it is not supported by the evidence, it comes to this court with a presumption of correctness, even though the evidence is in sharp conflict, and it will not be disturbed by us unless it is plainly wrong or without evidence to support it. *Reiber* v. *Duncan*, 206 Va. 657, 660, 145 S.E.2d 157, 160 (1965); *Hawthorne* v. *Hannowell*, 202 Va. 70, 76, 115 S.E.2d 889, 893 (1960).

█ The trial judge, in his letter and memorandum opinion, reviewed the evidence in great detail and referred to the many conflicts therein. The evidence supports his findings that the fence referred to in the testator's will was the Dincie Clary fence. It was a well known landmark and the testator helped construct it five years before his will was written. The line fixed by the trial court as the eastern boundary of plaintiff's property follows the language of the will. Plaintiff's own testimony shows the Woods fence stopped at the "old well," which was a considerable distance south of Pennington Bridge Road. Hence there was ample evidence from which the trial

court could conclude that the Woods fence was not the fence referred to in testator's will as running north to Pennington Bridge Road.

Plaintiff laid much stress on the testimony of Dincie Clary that the testator said, when a portion of the Woods fence was being repaired, that "This will be the line between Dick and Willie." But, as observed by the trial judge in his memorandum opinion, when Clary went on the land with Lynch the day before the trial of this case to show him plaintiff's eastern boundary line, Clary pointed to the Old Lumber Road as the line and did not mention the Woods fence or show Lynch the remnants of any fence.

For the reasons stated, the judgment of the trial court is

*Affirmed.*